UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN HOPKINS, LIANA HOPKINS and SEAN HOPKINS, <br><br> Plaintiffs <br><br> v. <br><br> NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK, and MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, <br><br> Defendants | 08 2965 (J. GARAUFIS) <br> (M.J. LEVY) |

## FIRST AMENDED COMPLAINT & JURY DEMAND

The plaintiff, complaining of the defendants, by and through their attorneys, Campbell Campbell Edwards & Conroy, Professional Corporation and Bleakley Platt & Schmidt, LLP, respectfully show to this Court and allege upon information and belief as follows, that at all times hereinafter mentioned the following:

### INTRODUCTION

1.      This is a personal injury action brought by Brian Hopkins against the National Railroad Passenger Corporation a/k/a Amtrak (hereinafter "Amtrak") and the Massachusetts Bay Transportation Authority (hereinafter "MBTA") to recover for severe personal injuries he suffered when he was electrocuted by the catenary wires located above an Amtrak Acela train parked at a platform of South Station in Boston, Massachusetts.  It is also a claim by his parents who are supporting him, to recover for the loss of their son's consortium.  The magnitude of the harm posed by the catenary wires mandated that Amtrak and the MBTA take action to minimize the danger, which they has never done.

## PARTIES & JURISDICTION

2.      Plaintiff Brian Hopkins is a twenty-five-year-old adult individual currently residing at 3027 30th St., Apt. 2C, Astoria, NY 11102.

3.      Plaintiff Helene Hopkins, mother of Brian Hopkins, is an individual currently residing at 50 Prescott Avenue in White Plains, New York.

4.      Plaintiff Sean Hopkins, father of Brian Hopkins, is an adult individual currently residing at 50 Prescott Avenue in White Plains, New York.

5.      Defendant Amtrak is a corporation engaged in the operation of intercity passenger rail service throughout the United States. Amtrak maintains its principal place of business at 60 Massachusetts Avenue, N.E., Washington, D.C. 20002. Amtrak also maintains an office in New York located at 8th Ave 31st Street / 8th Ave 33rd Street New York, NY 10001.

6.      Defendant MBTA is a body politic and corporate and political subdivision of the Commonwealth of Massachusetts with its principal place of business located at 10 Park Plaza, Room 3910, Boston 02116. The MBTA has consented to and stipulated to personal jurisdiction in the Court for this case only.

7.      Personal jurisdiction over Amtrak is proper pursuant to CPLR 302(a) as Amtrak regularly transacts business within New York, regularly contracts to supply services in New York, committed a tortuous act which caused injury within New York as well as other valid bases of jurisdiction.

8.      Subject matter Jurisdiction is also proper pursuant to 28 U.S.C.A. § 1332 because complete diversity exists between the parties.

9.      Venue is proper pursuant to 28 U.S.C.A. § 1391(b) as this is a transitory action and the plaintiff resides within Queens County and by stipulation of the parties. The amount of

2

damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## GENERAL FACTS

10. Amtrak is a common carrier.

11. Amtrak operates and maintains electrified railroad lines in the eastern United States, including but not limited to, the 38 miles beginning at the Massachusetts/Rhode Island border and terminating at South Station in Boston, Massachusetts (the "Subject Electrified Railroad Lines").

12. As a common carrier, Amtrak has a duty to maintain its property in a safe condition in view of all circumstances, including the likelihood of injury to others, the seriousness of the potential injury and the burden of avoiding the risk.

13. As the entity that owns, operates and/or controls the Subject Electrified Railroad Lines, Amtrak has a duty to maintain its property in a safe condition in view of all circumstances, including the likelihood of injury to others, the seriousness of the potential injury and the burden of avoiding the risk.

14. These duties of care increase as the risk of harm increases and as the magnitude of the potential harm increases.

15. The Subject Electrified Railroad Lines use catenary wires, which run above the trains operating into and out of South Station.

16. These catenaries can carry as much as 27,500 volts of direct electricity.

17. These catenaries are never shut off, even during the hours when there are no trains entering or leaving South Station and when there are trains merely parked beneath them.

18. Catenaries present a risk of serious physical injury by electrocution to individuals, even when the catenaries are not contacted.

3

19. A person who is only in proximity to the catenary can be electrocuted, incinerated or killed by electricity that "arcs" from the catenary toward the person.

20. The risk of electrocution by "arcing" is not well known or obvious to railroad customers, railroad employees or the general public.

21. Amtrak, as a railroad company, owes a duty of care to those on or near its railroad track and even a higher duty of care when it has actual or imputed knowledge of a person's entry on its property.

22. The MBTA is a common carrier.

23. The MBTA owns, operates and/or controls South Station, which is located at or about One South Station, Boston, Massachusetts, including its railroad tracks, train platforms and related fixtures in connection with a railroad and mass transit facility.

24. As a common carrier, the MBTA has a duty to maintain its property in a safe condition in view of all circumstances, including the likelihood of injury to others, the seriousness of the potential injury and the burden of avoiding the risk.

25. As the entity that owns, operates and/or controls South Station, the MBTA has a duty to maintain its property in a safe condition in view of all circumstances, including the likelihood of injury to others, the seriousness of the potential injury and the burden of avoiding the risk.

26. These duties of care increase as the risk of harm increases and as the magnitude of the potential harm increases.

27. Electrified wires called "catenaries" run above the trains operating into and out of South Station.

28. These catenaries can carry as much as 27,500 volts of direct electricity.

29. These catenaries are never shut off, even during the hours when there are no trains entering or leaving South Station and when there are trains merely parked beneath them.

30. Catenaries present a risk of serious physical injury by electrocution to individuals, even when the catenaries are not contacted.

31. A person who is only in proximity to the catenary can be electrocuted, incinerated or killed by electricity that "arcs" from the catenary toward the person.

32. The risk of electrocution by "arcing" is not well known or obvious to railroad customers, railroad employees or the general public.

33. It was commonly known to the MBTA that individuals frequent the platforms where the catenaries are located between the hours of 11:00 p.m. and 5:00 a.m. In addition, between June 2002 and June 2007, there were numerous instances of vagrancy, vandalism, public intoxication, disorderly conduct, indecent public exposure and other incidents occurring between the hours of 11:00 p.m. and 5:00 a.m. in and around South Station.

34. The MBTA owes a duty of care to all individuals at South Station.

### THE INCIDENT

35. At approximately 5:00 p.m. on Saturday, July 8, 2006, Brian Hopkins arrived in Boston from New York.

36. Brian Hopkins visited with friends that evening and otherwise socialized.

37. At approximately 2:00 a.m. on Sunday, July 9, 2006, Brian Hopkins traveled to South Station intending to return to New York via mass transit.

38. While at South Station, Brian Hopkins received an electric shock of approximately 27,500 volts from the catenary wire that hung above the Amtrak Acela Express located and parked on Platform #7.

39. The train was dormant, but the catenary wire was still activated.

40. Boston EMS arrived at Track 7 of South Station, to find Brian Hopkins engulfed in flames on the roof of the train.

41. Brian Hopkins appeared to raise his head and look at the Boston EMS caregivers and then to roll from supine to prone several times, before sliding off of the side of the train onto a firefighter's gurney.

42. Boston EMS caregivers removed Brian Hopkins' burning clothing and wrapped him in sterile sheets. Brian Hopkins was conscious but unable to follow simple commands.

43. The Fire Investigation Unit was the first to arrive on the scene and determined that the fire was unintentional due to an unspecified arc.

44. Brian Hopkins was immediately taken to the Burn Unit at Massachusetts General Hospital, where he was kept in a medically induced coma until medical care providers could determine how to proceed.

45. Among the injuries he suffered, Brian Hopkins sustained third-degree burns over 85% of his body and his left hand and left leg were amputated.

46. Brian Hopkins has undergone numerous surgeries on his torso and extremities since July 16, 2006.

47. Brian Hopkins requires physical therapy, occupational therapy and strength and mobility training and is awaiting a prosthesis for his left arm.

## AS AN FOR THE FIRST CAUSE OF ACTION
## NEGLIGENCE (AMTRAK)

48. The Plaintiffs reassert by reference paragraphs 1 through 47 as if fully set forth herein.

49.     Since beginning its ownership, control and operation of the Subject Electrified Railroad Lines, Amtrak knew or should have known that electrified catenary wires, carrying as much as 27,500 volts of direct electricity, posed a significant risk of electrocution.

50.     Amtrak knew or should have known that allowing trains to park beneath electrified catenary wires substantially increased this risk of electrocution.

51.     Amtrak knew or should have known that persons trespassed on and/or burglarized trains, railroad tracks and related fixtures in connection with the railroad, including trains parked at the platforms at South Station in Boston, Massachusetts.

52.     Amtrak was negligent and otherwise breached the duty of care it owed to individuals on or near its trains at South Station. Amtrak's negligence includes, individually and collectively, the following:

- failing to properly monitor its trains while parked at the platform area or South Station, which is a magnet for individuals, including between the hours of 11:00 p.m. and 5:00 a.m., or take measures to ensure that trains parked at the platform areas were properly monitored; and

- failing to de-electrify the catenary wires when not in use or take measures to ensure that the catenary wires were not electrified when not in use; and

- failing to park trains away from the platform when not in use or requiring that the trains be parked away from all catenary wires when not in use; and

- failing to inform the public of the life threatening, latent hazards associated with the catenary wires being electrified when the trains are not in use; and

- failing to inform the public of the life threatening, latent hazard associated with arcing of the catenary wires onto individuals in proximity to them without the necessity of physical contact; and

7

- failing to otherwise maintain the catenary wires, trains and station in a manner that would prevent the known, foreseeable and unreasonable risk of electrocution to individuals in the area.

53. As a direct and proximate result of Amtrak's negligence, Brian Hopkins suffered severe personal injuries, pain and suffering, emotional distress, and economic damages including medical expenses and loss of earning capacity.

54. The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

55. It is hereby alleged that pursuant to CPLR 1603 this action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602 including CPLR 1602(5), (7) and (11).

## AS AN FOR THE SECOND CAUSE OF ACTION
## GROSS NEGLIGENCE, RECKLESSNESS, WILLFULNESS & WANTONNESS
## (AMTRAK)

56. The Plaintiffs reassert by reference paragraphs 1 through 55 as if fully set forth herein.

57. Since beginning its ownership, control and operation of the Subject Electrified Railroad Lines, Amtrak knew or should have known that electrified catenary wires, carrying as much as 27,500 volts of direct electricity, posed a significant risk of electrocution.

58. Amtrak knew or should have known that allowing trains to park beneath electrified catenary wires substantially increased this risk of electrocution.

59. Amtrak knew or should have known that persons trespassed on and/or burglarized trains, railroad tracks and related fixtures in connection with the railroad, including trains parked at the platforms at South Station in Boston, Massachusetts.

8

60. Amtrak was grossly negligent, reckless, willful and wanton, and otherwise breached the duty of care it owed to individuals on or near its trains in South Station. Amtrak's grossly negligent, reckless, willful and wanton conduct includes, individually and collectively, the following:

- failing to properly monitor its trains while parked at the platform area or South Station, which is a magnet for individuals, including between the hours of 11:00 p.m. and 5:00 a.m., or take measures to ensure that trains parked at the platform areas were properly monitored; and

- failing to de-electrify the catenary wires when not in use or take measures to ensure that the catenary wires were not electrified when not in use; and

- failing to park trains away from the platform when not in use or requiring that the trains be parked away from all catenary wires when not in use; and

- failing to inform the public of the life threatening, latent hazards associated with the catenary wires being electrified when the trains are not in use; and

- failing to inform the public of the life threatening, latent hazard associated with arcing of the catenary wires onto individuals in proximity to them without the necessity of physical contact; and

- failing to otherwise maintain the catenary wires, trains and station in a manner that would prevent the known, foreseeable and unreasonable risk of electrocution to individuals in the area.

61. As a direct and proximate result of Amtrak's grossly negligent, reckless, willful and wanton conduct, Brian Hopkins suffered severe personal injuries, pain and suffering, emotional distress, and economic damages including medical expenses and loss of earning capacity.

62. The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

63. It is hereby alleged that pursuant to CPLR 1603 this action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602 including CPLR 1602(5), (7) and (11).

## AS AN FOR THE THIRD CAUSE OF ACTION
## NEGLIGENCE (MBTA)

64. The plaintiffs reassert by reference paragraphs 1 through 63 as if fully set forth herein.

65. Since beginning their ownership, control and operation of South Station, the MBTA knew or should have known that individuals frequented the platform area, including between the hours of 11:00 p.m. and 5:00 a.m., in order to gain access to trains and for other purposes. In addition, the MBTA knew or should have known that persons trespassed on and/or burglarized the railroad tracks, train platforms and related fixtures in connection with the railroad and mass transit facility located at South Station between the hours of 11:00 p.m. and 5:00 a.m. Further, the MBTA knew or should have known that intoxicated and/or disorderly persons frequented the South Station facility.

66. The MBTA knew or should have known that the area where the electrified catenary wires ran, carrying as much as 27,500 volts of direct electricity, posed a significant risk of electrocution.

67. The MBTA knew or should have known that allowing trains to park beneath electrified catenary wires substantially increased this risk of electrocution.

68. The MBTA was negligent and otherwise breached the duty of care it owed to individuals present at South Station. The MBTA's negligence includes, individually and collectively, the following:

- failing to lock the platform area or take measures to ensure that platform area is closed to the public when not in use; and

- failing to properly monitor the platform area which is a magnet for individuals, including between the hours of 11:00 p.m. and 5:00 a.m., or take measures to ensure that the platform areas were properly monitored; and

- failing to de-electrify the catenary wires when not in use or take measures to ensure that the catenary wires were not electrified when not in use; and

- failing to park trains away from the platform when not in use or requiring that the trains be parked away from all catenary wires when not in use; and

- failing to inform the public of the life threatening, latent hazards associated with the catenary wires being electrified when the trains are not in use; and

- failing to inform the public of the life threatening, latent hazard associated with arcing of the catenary wires onto individuals in proximity to them without the necessity of physical contact; and

- failing to otherwise maintain the catenary wires, trains and station in a manner that would prevent the known, foreseeable and unreasonable risk of electrocution to individuals in the area.

69. As a direct and proximate result of the MBTA's negligence, Brian Hopkins suffered severe personal injuries, pain and suffering, emotional distress, and economic damages including medical expenses and loss of earning capacity.

70. The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

71. It is hereby alleged that pursuant to CPLR 1603 this action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602 including CPLR 1602(5), (7) and (11).

### AS AN FOR THE FOURTH CAUSE OF ACTION
### GROSS NEGLIGENCE, RECKLESSNESS, WILLFULNESS & WANTONNESS
### (MBTA)

72. The plaintiffs reassert by reference paragraphs 1 through 71 as if fully set forth herein.

73. Since beginning their ownership, control and operation of South Station, the MBTA knew or should have known that individuals frequented the platform area, including between the hours of 11:00 p.m. and 5:00 a.m., in order to gain access to trains and for other purposes. In addition, the MBTA knew or should have known that persons trespassed on and/or burglarized the railroad tracks, train platforms and related fixtures in connection with the railroad and mass transit facility located at South Station between the hours of 11:00 p.m. and 5:00 a.m. Further, the MBTA knew or should have known that intoxicated and/or disorderly persons frequented the South Station facility.

74. The MBTA knew or should have known that the area where the electrified catenary wires ran, carrying as much as 27,500 volts of direct electricity, posed a significant risk of electrocution.

75. The MBTA knew or should have known that allowing trains to park beneath electrified catenary wires substantially increased this risk of electrocution.

76. The MBTA was grossly negligent, reckless, willful and wanton, and otherwise breached the duty of care it owed to individuals present at South Station. The MBTA's grossly

negligent, reckless, willful and wanton conduct includes, individually and collectively, the following:

- failing to lock the platform area or take measures to ensure that platform area is closed to the public when not in use; and

- failing to properly monitor the platform area which is a magnet for individuals, including between the hours of 11:00 p.m. and 5:00 a.m., or take measures to ensure that the platform areas were properly monitored; and

- failing to de-electrify the catenary wires when not in use or take measures to ensure that the catenary wires were not electrified when not in use; and

- failing to park trains away from the platform when not in use or requiring that the trains be parked away from all catenary wires when not in use; and

- failing to inform the public of the life threatening, latent hazards associated with the catenary wires being electrified when the trains are not in use; and

- failing to inform the public of the life threatening, latent hazard associated with arcing of the catenary wires onto individuals in proximity to them without the necessity of physical contact; and

- failing to otherwise maintain the catenary wires, trains and station in a manner that would prevent the known, foreseeable and unreasonable risk of electrocution to individuals in the area.

77. As a direct and proximate result of the MBTA's grossly negligent, reckless, willful and wanton conduct, Brian Hopkins suffered severe personal injuries, pain and suffering, emotional distress, and economic damages including medical expenses and loss of earning capacity.

78. The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

79. It is hereby alleged that pursuant to CPLR 1603 this action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602 including CPLR 1602(5), (7) and (11).

### AS AN FOR THE FIFTH CAUSE OF ACTION
### LOSS OF SERVICES (AMTRAK & MBTA)

80. The Plaintiffs reassert by reference paragraphs 1 through 79 as if fully set forth herein.

81. Liana Hopkins and Sean Hopkins are Brian Hopkins' parents.

82. As result of the foregoing conduct by Amtrak, Liana Hopkins and Sean Hopkins have been deprived of Brian Hopkins' love, companionship, society, affection and all other physical, emotional and psychological benefits of a parent-child relationship due to the physical and psychological trauma that Brian Hopkins has suffered and continues to suffer.

83. In addition, Liana Hopkins and Sean Hopkins now provide for Brian Hopkins due to the physical and psychological trauma that Brian Hopkins has suffered and continues to suffer.

84. The amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

85. It is hereby alleged that pursuant to CPLR 1603 this action is exempt from the operation of CPLR 1601 by reason of one or more of the exemptions provided in CPLR 1602 including CPLR 1602(5), (7) and (11).

WHEREFORE, the plaintiff demands:

A) Judgment against the defendants in the First, Second Third, Fourth and Fifth Causes of Action for compensatory damages;

B) Punitive damages to be awarded together with attorneys' fees, interest, costs and disbursements of this action;

C) Any other or further damages as this Court deems just and proper.

PLAINTIFFS REQUEST A JURY

Dated: December 9, 2008  
Boston, MA

PLAINTIFFS, by their counsel  
CAMPBELL CAMPBELL EDWARDS & CONROY,  
Professional Corporation

By: _____  
Russell X. Pollock, Esq.  
One Constitution Plaza  
Boston, MA 02129  
(617) 241-3000 / FAX (617) 241-5115

&

John A. Risi, Esq.  
Bleakley Platt & Schmidt, LLP  
One North Lexington Avenue  
P.O. Box 5056  
White Plains, NY 10602-5056  
(914) 949-2700 / FAX (914) 683-6956

ATTORNEY'S VERIFICATION

STATE OF MASSACHUSETTS  )
                        :  SS:
COUNTY OF SUFFOLK       )

RUSSELL X. POLLOCK, attorney at law licensed to practice in the courts of New York State, states that affirmant is a member of the firm of Campbell Campbell Edwards & Conroy, Professional Corporation, attorneys for the plaintiff(s) in the within action; that affirmant has read the foregoing FIRST AMENDED COMPLAINT and knows the contents thereof; that the same is true to affirmant's own knowledge except as to those matters therein stated to be alleged on information and belief, and that as to those matters, affirmant believes them to be true.

Affirmant further states that the reason this verification is made by affirmant and not by the plaintiff(s) is that the plaintiff(s) is/are not within the County wherein affirmant maintains his office.

The grounds of affirmant's belief are investigation and data in affirmant's possession and consultations had with the plaintiffs and well as expert consultants.

The undersigned affirms that the following statements are true under penalty of perjury.

Dated: December 9, 2008
Boston, MA

_____
RUSSELL X. POLLOCK