# LANDMAN CORSI BALLAINE & FORD P.C.

A NEW YORK PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

CRISTI L. LUCKOW
ASSOCIATE
TEL: (212) 238-4806
EMAIL: cluckow@lcbf.com

120 BROADWAY
27TH FLOOR
NEW YORK, NY 10271-0079
TELEPHONE (212) 238-4800
FACSIMILE (212) 238-4848
www.lcbf.com

One Gateway Center
Newark, NJ 07102
Tel: (973) 623-2700

2133 Arch Street
Philadelphia, PA 19103
Tel: (215) 561-8540

October 26, 2009

**VIA ECF and Hand Delivery**

The Honorable Robert M. Levy
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

   **Re:**   Brian Hopkins, Liana Hopkins and Sean Hopkins v. National Railroad
          Passenger Corporation a/k/a Amtrak and Massachusetts Bay Transportation
          Authority
          **Index No.:** 08-CV-2965 (NGG) (RML)
          **Our File #:** 148-2221

Dear Magistrate Levy:

   We represent the Defendants in the above referenced action. As you know, this case involves
an incident in which plaintiff, Brian Hopkins, age 24 at the time, was electrocuted on July 9, 2006, at
approximately 4:00 a.m., after trespassing and climbing on top of a parked Acela train at South Station
in Boston, Massachusetts while highly intoxicated. As instructed by the Court at the status conference
on October 19, 2009, we write to advise the Court of the steps necessary in order for Defendants to
conduct the various searches that were directed. Pursuant to the Court's instructions we write to seek
modification of the Court Order due to the unreasonable burden of these broad requests that will not
lead to the discovery of admissible evidence.

   The Court ordered that Defendants conduct a search for incident reports relating to criminality,
vandalism and illegal entry on the **tracks or trains** at South Station for two years prior to the date of
the incident. We contacted the MBTA to determine precisely what a search of this magnitude would
entail. In order for the MBTA to comply with this directive, the Transit Police statistician was required
to perform a computer query for all criminal activity at South Station for this period of time and to
generate a spreadsheet with generic information about each incident. (A copy of this spreadsheet is
being submitted to the Court for an in camera inspection by hand delivery of this letter.)

   As one would suspect at a train station in an urban setting, the vast majority of the incidents
involved theft of property, indecent exposure, purse snatchings, shoplifting and lewd conduct. Equally
significant, between the hours of 2:00 a..m and 5:00 a.m. (encompassing the time period similar to
plaintiff's incident), only 4 incidents occurred of a total of 159 incidents. None of these involved
circumstances remotely similar to the plaintiff's reckless actions.

489152.1 DocsNY

Landman Corsi Ballaine & Ford p.c.

The Honorable Robert M. Levy
October 26, 2009
Page 2

To comply with the Court's directive, each individual case for 159 incidents would then need to be pulled and reviewed to determine, *inter alia*, whether the incident involved activity on the tracks or trains, rather than in another area of the station. Moreover, it would be highly burdensome to require the MBTA to pull these reports when there is nothing in this spreadsheet even remotely relating to the situation here - where a highly educated adult recklessly placed himself in harms way by inexplicably climbing on top of a railroad car, not because of any "criminal activity" at South Station, other than plaintiff's own illegal conduct. Lastly, due to public records law, CORI [Criminal Offender Record Information Act, M.G.L. c.6, §168-171] and other privacy laws, identifying information in the incident reports would need to be redacted prior to disclosure. A lawsuit is not an open ended opportunity to "fish" with the hope of coming up with a viable legal theory. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559-60 (2007)(warning of discovery abuse stemming from general pleadings and explaining that "it is only by taking care to require allegations that reach the level suggesting conspiracy that we can hope to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence").

In addition, the Court directed that the Defendants conduct a search for all catenary wire electrocutions at South Station from 1991 through the date of the incident. As discussed at the conference, we previously conducted a search for catenary wire electrocutions at South Station for two years prior to the incident and none were found. Initially, we were able to confirm that the catenary wires at South Station were not electrified until approximately January 2001. Based upon the Court's order we have conducted a search and determined that there were no other electrocutions at South Station involving a catenary wire.

Lastly, the Court directed that Amtrak conduct a search for all catenary wire electrocutions in all "holding areas[1]" for a period of ten years prior to the incident [1996-2006]. It was our understanding that the Court required a nationwide search to the extent that the search would not be unreasonably burdensome. We have confirmed that Amtrak only has catenary wires on the Northeast Corridor. There are approximately 25 stations with catenary wires. A search of this magnitude for this period of time is overly burdensome.

In order to perform this search, the Claims Department would first have to conduct a computer search initially to obtain a list of all electrocutions [whether catenary, third rail or other] on its Northeast Corridor. The list would then need to be pared down by the Claims Department by manually searching and reviewing each individual computer record (to the extent available) to attempt to confirm whether the incident occurred on the catenary system, and if so, whether it, in fact, occurred in a station. We cannot say whether the computer records will provide sufficient information to make this determination. In the event that the computer files are insufficient, we will need to determine whether there are any underlying records that might yield the necessary information

As discussed at the conference, pursuant to Massachusetts law, in order to prevail, Plaintiff must

---

[1] Based upon the discussions at the conference, it was our understanding that Amtrak was directed to perform a search for catenary wire electrocutions in all Amtrak stations. We assume "holding areas" refers to stations.

489152.1 DocsNY

**Landman Corsi Ballaine & Ford** P.C.

The Honorable Robert M. Levy
October 26, 2009
Page 3

establish that Defendants' conduct was reckless, wilful and wanton.  In order to succeed on such a claim, the risk created by Defendants' conduct must be substantially greater than that which would constitute negligence and the risk must be one involving an easily perceptible danger of death or grave physical harm.  Montes v. Mass. Bay Transp. Auth., 446 Mass. 181, 184-85 (2006).

To the extent that the Court is requiring Defendants to produce records relating to electrocutions at stations other than South Station, including stations that are hundreds of miles away and located outside the Commonwealth of Massachusetts, this evidence would be patently inadmissible.  For example, Amtrak's New York Pennsylvania Station, with its numerous subway levels, Long Island Railroad, New Jersey Transit, shopping concourses, along with access to Madison Square Garden built on top of it, presents a completely different physical environment than does South Station's tracks which are outside the terminal building in Boston.

It is widely accepted under federal, New York and Massachusetts law that the evidence of prior accidents is generally inadmissible to show a defendant's notice, knowledge of a dangerous condition, or state of mind, for purposes of both liability (including where wantonness is the standard of care).  The sole exception to this rule is where the proponent demonstrates that the accidents occurred under circumstances substantially similar to those at issue in the case.  See McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981)(and cases cited therein); Bounds v. Western Regional Off Track Betting, 256 A.D.2d 1165, 1165, 684 N.Y.S.2d 105, 106 (4th Dep't 1998); Ramirez v. Sears, Roebuck & Co., 236 A.D.2d 530, 531, 653 N.Y.S.2d 944, 946 (2d Dep't 1997); Crivello v. All-Pak Machinery Systems, Inc., 446 Mass.729, 738, 847 N.E.2d 307, 314 (2006); see also Edwards v. Consolidated Rail Corp.,[2] 567 F. Supp. 1087 (D.D.C. 1983).  Given the clear inadmissibility of this evidence, we respectfully submit there is no basis to conclude that incidents in other stations would lead to the discovery of any admissible evidence.

Given the lack of relevance of electrical injury incidents at other stations in the Northeast Corridor, combined with the burden of having to search for information involving the many stations within the Corridor,  Defendants request a modification of the Court's October 19, 2009 Order to limit it to incidents in South Station, or at most, to stations that are located within the Commonwealth of Massachusetts.

The Court also directed that Plaintiffs shall have the right to depose all witnesses that Defendants intend to present at trial and we would like to confirm that the same right will be granted with regard to Plaintiffs' witnesses.

---

[2] In Edwards, an eleven-year old was injured by catenary wires after trespassing onto Conrail property and climbing on top of a freight car.  Plaintiff sought to introduce evidence that 101 other trespassers had suffered electrical contact accidents with catenary wires throughout the Northeast Corridor.  The Edwards Court excluded this evidence, even that of two accidents that occurred in very close proximity to the place of plaintiff's accident, explaining that "any notice that defendant may have had regarding children who had previously climbed on trains . . . at other areas . . . is not relevant to defendant's knowledge or realization of the likelihood that children would be injured by the catenary wire at the site of plaintiff's accident."  Edwards, 567 F. Supp. at 1107.

489152.1 DocsNY

Landman Corsi Ballaine & Ford P.C.

The Honorable Robert M. Levy
October 26, 2009
Page 4

We appreciate your consideration of this matter.

Respectfully submitted,

Landman Corsi Ballaine & Ford P.C.

By:

Cristi L. Luckow (CL 0415)
Mark S. Landman (ML 7654)
Attorneys for Defendants National Railroad
Passenger Corporation and Massachusetts Bay
Transportation Authority
120 Broadway, 27th Floor
New York, NY  10271-0079
(212) 238-4800

cc:     **VIA ECF and Regular Mail**
        Russell Pollock, Esq.
        Campbell Campbell Edwards & Conroy
        One Constitution Plaza, 3rd floor
        Boston, MA 02129

489152.1 DocsNY