# LANDMAN CORSI BALLAINE & FORD P.C.
### A NEW YORK PROFESSIONAL CORPORATION

CRISTI L. FUSARO
OF COUNSEL
TEL: (212) 238-4806
EMAIL: cfusaro@lcbf.com

ATTORNEYS AT LAW

120 BROADWAY
27TH FLOOR
NEW YORK, NY 10271-0079
TELEPHONE (212) 238-4800
FACSIMILE (212) 238-4848
www.lcbf.com

One Gateway Center
Newark, NJ 07102
Tel: (973) 623-2700

1617 JFK Boulevard
Philadelphia, PA 19103
Tel: (215) 561-8540

June 29, 2011

**VIA ECF**

The Honorable Robert M. Levy
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

> **Re:**   Brian Hopkins, Liana Hopkins and Sean Hopkins v. National Railroad
> Passenger Corporation a/k/a Amtrak and Massachusetts Bay Transportation
> Authority
> **Index No.:** 08-CV-2965 (NGG) (RML)
> **Our File #:** 148-2221

Dear Magistrate Judge Levy:

We represent the Defendants National Railroad Passenger Corporation ("Amtrak") and Massachusetts Bay Transportation Authority ("MBTA") in the above referenced action. As you know, this case involves an incident in which plaintiff, Brian Hopkins, age 24 at the time, was electrocuted on July 9, 2006, at approximately 4:00 a.m., after trespassing and inexplicably climbing on top of a parked Acela train at South Station in Boston, Massachusetts while highly intoxicated. We write in response to Plaintiffs' letter dated June 17, 2011 ("Plaintiffs' Letter") which seeks additional depositions on issues which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

During the May 27, 2011 conference with the Court, Plaintiffs advised that they may want to conduct even more depositions, but would need to review the prior deposition testimony in order to come to a determination. The Court advised that the parties should confer and set forth the following briefing schedule in the event the parties could not agree: Plaintiff to provide a letter application to the Court by June 17, 2011 and Defendants to respond by June 29, 2011. On June 16, 2011, Plaintiffs, for the first time, forwarded an email which detailed information regarding their request for further depositions. That same day, given the Court's briefing schedule, Defendants provided a response outlining their objections to additional depositions. A copy of Plaintiffs' June 16, 2011 email and Defendants' response is attached hereto as Exhibit "A."

Specifically, Plaintiffs seek additional depositions with respect to the following issues: (I) other electrocution accidents or incidents; (ii) any steps taken to improve safety and reduce the likelihood of

520099.1 DocsNY

LANDMAN CORSI BALLAINE & FORD P.C.

The Honorable Robert M. Levy
June 29, 2011
Page 2

people being electrocuted at South Station and other stations; (iii) the role of Allied Barton at South Station and (iv) security at stations other than South Station. For the reasons set forth below, Plaintiffs' application for additional depositions should be denied in its entirety because Plaintiffs have completely failed to explain why Defendants should be required to produce yet another witness to testify about incidents of electrical injury occurring over 10 years ago at areas located outside the Commonwealth of Massachusetts under entirely different circumstances. Moreover, as this incident is the only electrical injury from a catenary wire occurring at South Station, there have been no additional steps taken to reduce the likelihood of people being electrocuted at South Station. Furthermore, neither Defendants Amtrak, nor MBTA have contracted with Allied Barton with regard to South Station so they have no first hand knowledge about its legal obligations and duties. Finally, security at stations other than South Station is wholly irrelevant to this lawsuit. Indeed, if the highly intoxicated plaintiff had jumped off a bridge or onto a highway in Boston, the City of Boston would not even have been sued for the lack of "security" to prevent such reckless acts. It is time to put an end to Plaintiffs' nearly three (3) year quest to develop a plausible legal theory.

*Discovery To Date*

To date, Defendants have made every effort to cooperate with Plaintiffs' counsel regarding discovery, have conducted extensive and protracted searches in order to comply with this Court's directives, produced a voluminous amount of documents and produced six (6) witnesses for depositions, including the two first-responding MBTA officers, PO Royline Lamb and PO Kelly Daniel; the lead MBTA detective assigned to investigate this incident, Detective Andrea Purcell; MBTA Sgt. Daniel O'Toole, a detective (at the time) assigned to investigate this incident who inspected the top of the Acela train; Amtrak Captain Wayne Moore, assigned to investigate this incident and Robert Verhelle, Deputy Chief Engineer for Amtrak's Electrical Traction Division, a witness with the most knowledge of Amtrak's catenary system.[1]

Amtrak's search initially covered catenary electrocutions at South Station for a period of two years prior to this incident. Then, when no incidents were uncovered, the Court, at Plaintiffs' request, and over Defendants' objections, broadly expanded Amtrak's search to cover any catenary electrocutions in all **thirty-seven stations** anywhere in the Northeast Corridor for a period of **ten years** prior to the date of the subject incident [July 9, 1996-July 9, 2006]. Again, no responsive incidents were found. Then, when Plaintiffs were clearly disappointed with the results of Amtrak's wide-ranging search for electrical injury records, they sought an Order to compel Defendants to disclose records relating to electrical injuries which were turned over in an unrelated case, Klein/Birdwell v. National

---

[1] Relevant portions of the deposition transcript of PO Royline Lamb are annexed hereto as Exhibit "B;" relevant portions of the transcript of PO Kelly Daniel at Exhibit "C;" relevant portions of the transcript of Detective Andrea Purcell at Exhibit "D;" relevant portions of the transcript of Sgt. Daniel O'Toole at Exhibit "E;" relevant portions of the transcript of Capt. Wayne Moore at Exhibit "F" and relevant portions of the transcript of Robert Verhelle at Exhibit "G."

520099.1 DocsNY

LANDMAN CORSI BALLAINE & FORD P.C.

The Honorable Robert M. Levy
June 29, 2011
Page 3

Railroad Passenger Corp. et al., 2:04-cv-00955-LS (E.D. Pa.), pursuant to an October 1, 2004 Order.[2]
Over Defendants' objection, the Court ordered Defendants to produce the prior electrical incidents and
training materials which were turned over in Klein/Birdwell pursuant to the October 2004 Order. By
letter dated March 24, 2010, Defendants complied with the Court's directive and disclosed reports
involving six (6) incidents, five (5) of which occurred between October 1992 and June 1996, outside
the ten year time frame previously directed by the Court.[3]  None of the incident reports turned over
pursuant to the October 2004 Klein/Birdwell order occurred within the Commonwealth of
Massachusetts. Moreover, of these incidents, the only one that even involved an Amtrak train was the
incident from October 1992 which occurred in New York's Pennsylvania Station nearly fourteen years
before this incident.

In addition, Defendants have produced significant additional discovery in this action, including
responses to Interrogatories for both Defendants and nearly 1,600 pages of documents consisting of:
(i) accident and police reports from Amtrak, MBTA and non-party Allied Security; (ii) a surveillance
tape from the night of the incident; (iii) photographs; (iv) a complete copy of the MBTA Detectives'
file regarding this incident; and (v) the *Agreement Between Amtrak and MBTA for Use and
Maintenance of the MBTA Attleboro Line*, the *Agreement Between Amtrak and MBTA for the
Electrification of MBTA Rail Line in Massachusetts*, the *Amtrak Management Services Agreement for
High Speed Rail Equipment*, the *Amtrak Electrical Operating Instructions*, *(*vi) multiple leases and/or
lease modification agreements between multiple parties for South Station; (vii) the Amtrak
Maintenance of Way Safety Rules and Regulations and Amtrak Maintenance of Equipment Safety Rules
and Regulations; and  (viii) additional training materials regarding Amtrak's catenary system.

As set forth below, the additional depositions sought by Plaintiffs are not relevant and/or are not
reasonably calculated to lead to the discovery of admissible evidence.  Pursuant to well-settled
Massachusetts law, in order to prevail, Plaintiff must establish that Defendants' conduct was reckless,
wilful and wanton. Schofield v. Merrill, 386 Mass. 244, 245 (1982)(trespasser is entitled to no greater
duty of care from one with a right of control over land than that he refrain from wilful, wanton or
reckless disregard for the trespasser's safety and whether a person is a trespasser is a question of law for
the court); Medeiros v. Huron Realty Trust, et al., 1993 WL 818582 *2 (1993)(an owner owes to
unlawful trespassers merely a duty to refrain from willful, wanton and reckless behavior); Mulrooney
v. Popko, 19 Mass.App.Ct. 917 (1984)(plaintiff, who drove her car into a parking lot which was

---

[2] The Klein/Birdwell incident did not occur in a train station.  It occurred on a stretch of 1.2 mile tail
track being used to temporarily park freight (not passenger) trains; the tail track was located on top of a steep
30-foot dirt and gravel embankment behind the rear of a parking lot in Lancaster, Pennsylvania.  No part of
the tail track was located at a train station, nor did Klein, Birdwell or anyone else remotely confuse it for a
train station, as evidenced by the fact that the two climbed on top of a parked Norfolk Southern (not Amtrak)
freight train.

[3] One incident occurred in March 2001, but was not previously disclosed by Defendants since it did
not occur in a station, but rather occurred when an individual climbed on top of a freight train (not Amtrak)
while the train was between stations.

520099.1 DocsNY

LANDMAN CORSI BALLAINE & FORD P.C.

The Honorable Robert M. Levy
June 29, 2011
Page 4

reserved for parking by tenants and who subsequently slipped and fell was a trespasser to whom no duty of due care was owed, but only a duty to refrain from wilful, wanton or reckless conduct) . In order to succeed on such a claim, the risk created by Defendants' conduct must be substantially greater than that which would constitute negligence and the risk must be one involving an easily perceptible danger of death or grave physical harm. Montes v. Mass. Bay Transp. Auth., 446 Mass. 181, 184-85 (2006) (as a matter of law excessive speed, 2.5 times the limit and inattention by train operator, without more, do not constitute recklessness). We understand from the May 27, 2011 conference call with the Court that after nearly three years of fishing for a legal theory Plaintiffs do not agree with Defendants' position, but Plaintiffs' Letter has completely failed to set forth their legal position. Regardless, even assuming, *arguendo*, that the standard was one of negligence, additional depositions are still not warranted on the subjects identified in Plaintiffs' Letter.

| | |
|---|---|
| *Items 1 and 2:* | *Electrocution Accidents or Incidents & Steps Taken to Improve Safety and Reduce the Likelihood of People Being Electrocuted At South Station and Other Stations* |

Plaintiffs' Letter argues that "other electrocution accidents or incidents are relevant on the issues of notice, negligence, recklessness and the duty to abate to the greatest degree possible such accidents from occurring (including Brian Hopkins' electrocution)."

It is widely accepted under federal, New York and Massachusetts law that the evidence of prior accidents is generally inadmissible to show a defendant's notice, knowledge of a dangerous condition, or state of mind, for purposes of liability (including where wantonness is the standard of care). The sole exception to this rule is where the proponent demonstrates that the accidents occurred under circumstances substantially similar to those at issue in the case. See McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981)(and cases cited therein)(manufacturer of portable circular saw sued for negligence and Court held evidence of prior accidents admissible only if proponent shows accidents occurred under circumstances substantially similar to the issue in case at bar); Bounds v. Western Regional Off Track Betting, 256 A.D.2d 1165, 1165, 684 N.Y.S.2d 105, 106 (4th Dep't 1998)(defense verdict in case involving slip and fall on defendant's property affirmed and Fourth Department found trial court's preclusion of evidence of other accidents at premises was proper since "proof of a prior accident, whether offered as proof of the existence of a dangerous condition or as proof of notice thereof, is admissible only upon a showing that the relevant conditions of the subject accident and the previous one were substantially the same"); Ramirez v. Sears, Roebuck & Co., 236 A.D.2d 530, 531, 653 N.Y.S.2d 944, 946 (2d Dep't 1997)(court erred in permitting testimony of prior accidents involving same table saw used by plaintiff since there was no proof that the accidents were, in their relevant details and circumstances, substantially similar to the subject accident); Crivello v. All-Pak Machinery Systems, Inc., 446 Mass.729, 738, 847 N.E.2d 307, 314 (2006)(defense verdict in case involving injuries from a bagging machine affirmed and court held it was proper for judge to exclude prior

LANDMAN CORSI BALLAINE & FORD P.C.

The Honorable Robert M. Levy
June 29, 2011
Page 5

accidents on the machine); see also Edwards v. Consolidated Rail Corp.[4], 567 F. Supp. 1087 (D.D.C. 1983).

As discussed above, after a search directed by the Court, there were **no** other prior incidents of catenary electrocutions at South Station at any point in time since the electrification system was installed in 2001. Moreover, a ten year search for any catenary electrocutions in all thirty-seven stations in the Northeast Corridor was also negative. Furthermore, each witness already produced for a deposition was thoroughly questioned regarding his or her knowledge of other electrocutions, whether they involved the catenary wire or not, at South Station and elsewhere, including outside the Commonwealth of Massachusetts. See Exhibit "B," at pp. 42-49; Exhibit "C," at pp. 27-29; Exhibit "D," at pp. 68-71, 96-99, 152-153; Exhibit "E," at pp. 46-49; Exhibit "F," at pp. 26-29, 31 and Exhibit "G," at pp. 114, 119-123, 123-145. Each MBTA witness that was produced and Amtrak Captain Wayne Moore testified that they were unaware of any prior catenary electrocutions at South Station at any time and were unaware of any prior incident of a person climbing on top of a train whether at South Station or any other station. See Exhibit "B," at pp.42, 45, 49; Exhibit "C," at pp. 27-29; Exhibit "D," at pp. 71 and 96, Exhibit "E," at pp.46, 48-49 and Exhibit "F," at pp. 26-29, 31.

Moreover, Defendants already turned over prior incident reports produced pursuant to the October 2004 Order in Klein/Birdwell, including electrocutions at stations other than South Station that are hundreds of miles away and outside the Commonwealth of Massachusetts despite the fact that this evidence would be patently inadmissible. As set forth above, the only incident that involved an Amtrak train occurred in October 1992 [nearly fourteen years prior to the incident in this case] in New York Pennsylvania Station. Amtrak's New York Pennsylvania Station, with its numerous subway levels, Long Island Railroad, New Jersey Transit, shopping concourses, along with access to Madison Square Garden built on top of it, presents a completely different physical environment than does South Station's tracks which are outside the terminal building in Boston. Yet, Plaintiffs' counsel thoroughly questioned Robert Verhelle, the Deputy Chief Engineer for Amtrak's Electrical Traction Department, with respect to this incident which occurred at Penn Station. See Exhibit "G," at pp. 135-137. In fact, Plaintiffs asked Mr. Verhelle about each prior incident referred to in the Klein/Birdwell records. Id. at pp. 123-128, 128-131, 132-135, 135-137, 138-141 and 142-145.

Plaintiffs should not be permitted to engage in further questioning of yet more witnesses

---

[4] In Edwards, an eleven-year old was injured by catenary wires after trespassing onto Conrail property and climbing on top of a freight car. Plaintiff sought to introduce evidence that other trespassers had suffered electrical contact accidents with catenary wires throughout the Northeast Corridor. The Edwards Court excluded this evidence, even that of two accidents that occurred in very close proximity to the place of plaintiff's accident, explaining that "any notice that defendant may have had regarding children who had previously climbed on trains . . . at other areas . . . is not relevant to defendant's knowledge or realization of the likelihood that children would be injured by the catenary wire at the site of plaintiff's accident." Edwards, 567 F. Supp. at 1107.

520099.1 DocsNY

LANDMAN CORSI BALLAINE & FORD P.C.

The Honorable Robert M. Levy
June 29, 2011
Page 6

regarding electrical injury incidents, without regard to whether those incidents are relevant to this action or reasonably calculated to lead to the discovery of admissible evidence. With all due respect, this Court already has been overly generous to Plaintiffs by directing Amtrak to produce records of electrical injury incidents at any of Amtrak's 37 train stations over the course of a full decade prior to the incident at issue, as well as the records produced in Klein/Birdwell. We respectfully submit that enough is enough.

Despite Plaintiffs' dissatisfaction with the testimony he has elicited with respect to prior incidents, Plaintiff has been provided with these prior incident reports and there is nothing further an additional witness could add. Mr. Verhelle is Amtrak's most knowledgeable witness with respect to the catenary system and these incidents. As noted, he was thoroughly questioned about the prior electrocutions as well as the documents produced. These include documents relating to (1) an incident that occurred in June 1996 when an individual climbed on top of a multiple unit car (not Amtrak) while the train was outside of Trenton Station at milepost 56-49 (see Exhibit "G" at pp. 123-128); (2) an incident that occurred in May 1994 when an individual climbed on top of a freight car (not Amtrak) using a ladder in Chester, Pennsylvania (Id. at pp. 128-131); (3) an incident that occurred in November 1993 in a yard (non-Amtrak) in Newark, Delaware when an individual climbed on top of a Conrail freight train using a ladder (Id. at 132-135); (4) an incident in October 1992 at New York Penn Station when an individual used a ladder to climb onto the engineer cab of the train (Id. at pp. 135-137); (5) an incident that occurred in August 1993 when two juveniles climbed on a non-Amtrak train using a ladder in a yard above a New Jersey Transit railyard (Id. at pp. 138-141) and (6) an incident that occurred in March 11, 2001 in Wilmington, Delaware when an individual climbed on top of a Burlington Northern freight train while the train was between stations (Id. at pp. 142-145). Even if any of these incidents had any relevance, which they do not, Mr. Verhelle is the most knowledgeable person at Amtrak regarding them.

In addition, Mr. Verhelle was questioned at length regarding "steps taken to improve safety and reduce the likelihood of people being electrocuted at South Station and other stations," as set forth in Plaintiffs' Letter. Mr. Verhelle was asked generally about whether Amtrak investigated ways to reduce the ability of people without permission from getting into contact with catenary wires anywhere along the system and testified that:

> "along the right of way, the structures are not designed to have steps down low where someone walking along could do it. Or if there are steps, there's what's called an anti-climb device with a sign on it says danger, high voltage. If it's a lattice type structure then it's signed. And that's what I'm familiar with along the right of way for gaining access."

(Exhibit "G," at p.105-108). When asked specifically about efforts taken to look at issues related to trains parked under wires, Mr. Verhelle testified that:

520099.1 DocsNY

LANDMAN CORSI BALLAINE & FORD P.C.

The Honorable Robert M. Levy
June 29, 2011
Page 7

> "along the open right of way where you don't expect a passenger to be,
> or trespassers have, or a lot of our right of way is not fenced in, we have
> added signs as far as do not cross and danger electrified territory."

(Id. at pp. 109-10). As far as efforts in stations, Mr. Verhelle testified that "we don't have structures with ladders on them. They're a tubular nature or H type where you don't have access, easy access to get at them." (Id. at p. 110). Mr. Verhelle also testified that after the Klein/Birdwell incident, which did not involve an Amtrak train, or occur at a station, no changes were made by Amtrak from an electrical traction standpoint. (Id. at pp. 116-117). In addition, Amtrak Capt. Wayne Moore was questioned as to whether there were any changes to station security or Amtrak procedures as a result of the incident involving Plaintiff and testified that he was unaware of any changes. See Exhibit "F," at pp.44, 83. Plaintiffs have failed to set forth a sufficient basis to compel further depositions on this issue, as they already have questioned the most knowledgeable witnesses on the subject.

### The Role of Allied Barton at South Station

Plaintiffs' Letter indicates that they are entitled to a deposition with respect to Allied Barton's role at South Station because "either Amtrak or the MBTA hired [this] private security company to patrol South Station." Plaintiffs are wrong. Neither Defendant in this action hired Allied Barton to patrol South Station. Allied Barton is contracted by non-party Equity Office Properties ("EOP"), which leases South Station from the MBTA. EOP and Allied Barton are both defendants in the pending state court action brought by Plaintiffs in Massachusetts. Therefore, determining EOP's relationship with Allied Barton is an issue that should be resolved through deposition testimony in that action, not in this case.

Moreover, neither Amtrak or MBTA have a knowledgeable witness on this subject as neither party hired Allied Barton. The question of "whether Allied Barton had any responsibility regarding this accident," as referred to in Plaintiffs' Letter is being litigated by Plaintiffs in Massachusetts and is a question that should be directed to defendants Allied Barton and EOP in that action.

### Security at Stations Other than South Station

Again, without explanation, Plaintiffs' Letter summarily states that "how security is handled at other stations is relevant to whether it is particularly lacking at South Station, where patrons have access to tracks at all hours of the night."

First, it was not "access to the tracks" that caused Plaintiff's injuries, it was his outlandish act of climbing on top of a rail car that is 8 ½ feet above the platform.

Second, each MBTA witness produced was questioned at length regarding security at South Station, including with respect to patrol of the Station. See Exhibit "B," at pp. 27; Exhibit "C," at pp.

520099.1 DocsNY

LANDMAN CORSI BALLAINE & FORD P.C.

The Honorable Robert M. Levy
June 29, 2011
Page 8

26, 40-42, 44-45, 49-51; Exhibit "D," at pp. 39-40, 43-45, 144-146; Exhibit "E," at pp. 38-40 and Exhibit "F," at pp. 39-40.  How security is handled at stations other than South Station is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Even Plaintiffs acknowledge this, as they failed to even ask any of the Amtrak and MBTA police officers about security at other stations.  Having failed to do so, Plaintiffs have waived the right to seek further depositions on this utterly irrelevant issue, as each station has its own configuration and is located in its own unique environment.

We appreciate your consideration of this matter and respectfully submit that Plaintiffs' application for additional depositions should be denied in its entirety.  Lawsuits simply should not be turned into fishing expeditions with the hope and prayer that a legal theory will emerge from the muck of endless, expensive and utterly irrelevant discovery.

Respectfully submitted,

Landman Corsi Ballaine & Ford P.C.

By:     *Cristi L. Luckow*

Cristi L. Luckow (CL 0415)
Mark S. Landman (ML 7654)
Attorneys for Defendants National Railroad
Passenger Corporation and Massachusetts Bay
Transportation Authority
120 Broadway, 27th Floor
New York, NY  10271-0079
(212) 238-4800

cc:     **VIA ECF and Regular Mail**
Russell Pollock, Esq.
Campbell Campbell Edwards & Conroy
One Constitution Plaza, 3rd floor
Boston, MA 02129

520099.1 DocsNY