UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN HOPKINS, LIANA HOPKINS and SEAN HOPKINS, <br><br> Plaintiffs <br><br> v. <br><br> NATIONAL RAILROAD PASSENGER CORPORATION a/k/a AMTRAK and MASSCHUSETTS BAY TRANSPORTATION AUTHORITY, <br><br> Defendants | 08 CV 2965 (NGG)(RML) |

**PLAINTIFFS' SUR-REPLY MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to the Court's Order dated May 7, 2012, plaintiffs respectfully submit this Sur-Reply Memorandum in Opposition to Defendants' Motion for Summary Judgment.

**A.  GIVEN THE DEADLY INSTRUMENTALITY OPERATED BY DEFENDANTS, THEIR UTTER FAILURE TO CONSIDER REDUCING THE RISK OF HARM AND THE RELATIVELY EASY WAYS AVAILABLE TO REDUCE THAT RISK, THE CAUSES OF THIS ACCIDENT ARE ISSUES OF FACT FOR THE JURY.**

Defendants concede that the energized catenary wire posed a danger of death, severe burns and other serious injuries to anyone who touched or even came close to it. Additionally, defendants cannot dispute that they never even considered methods of reducing the risk of someone coming in contact with the energized catenary wire at South Station, as something a responsible landowner and business operator should periodically do in the ordinary course of business, but also in light of the history of severe personal injuries and death that has ensued when individuals ascend a train. Further, had defendants turned off the electricity to the tracks during the overnight hours (a 10 – 20 minute process),[1] locked the platform area or stored the

---

[1] See Exhibit 28 attached to the Second Declaration of Russell X. Pollock, which contains Amtrak Deputy Chief Robert J. Verhelle's deposition testimony at pages 78-80. Mr. Verhelle testified that the procedure for turning off

trains elsewhere, Mr. Hopkins would not have been injured. Indeed, defendants did not identify one independent expert to support their conduct and instead resorted to an in-house witness who testifies for Amtrak regularly. Clearly, the facts of this particular case make it a jury issue as to whether defendants were merely negligent, reckless or wanton and what role Mr. Hopkins' actions should be accorded, if any. These issues cannot be decided as a matter of law in this case.

Defendants' picking and choosing of other cases with different factual scenarios do not negate that material issues of fact are present in this case. For example, in Menard v. CSX Transp., Inc., 2012 WL 13372 (D. Mass. 2012), a case in which an individual was struck by a train in a rail yard after his foot became caught in a switch, the Court was impressed by the fact that the plaintiff simply did not assert any claims as to what the defendants should have done to prevent the accident or any details as to how the defendants' conduct was negligent, reckless, wanton or willful. While plaintiffs in this case believe the Menard plaintiff should have been entitled to discovery, the case at bar does not present that issue. As outlined above, there were many simple ways defendants could and should have prevented this accident. Moreover, "as the gravity of the possible harm increases, the likelihood of its occurrence need be correspondingly less" to generate a duty of precaution. William L. Prosser, *Law of Torts* § 31, at 147 (4th ed. 1971). Defendants could have and should have eliminated the risk of this accident occurring.

**B.   PRIOR ACCIDENTS, INCLUDING THE STRIKINGLY SIMILAR KLEIN ACCIDENT, SHOULD HAVE PROMPTED DEFENDANTS TO REDUCE THE OPPORTUNITY FOR SOMEONE TO ASCEND A TRAIN AND GET INJURED.**

In claiming there was never another electrocution *at South Station*, defendants miss the mark regarding the fact that electrocutions and serious injuries to individuals who got on top of

---

the electricity takes between 10 - 20 minutes depending on whether there is a train in the circuit that requires electricity or whether it can be turned off immediately. Given that they should have been doing this on a nightly basis after the last train arrived or departed, it is likely that the shut down procedure could be done even more swiftly.

trains at other locations should have provided notice to defendants on several important issues. The location of another accident, other than the fact that it occurred between a train and a catenary wire, is immaterial. Although defendants should be proactive regarding safety as it relates to the deadly instrumentality they use, the prior deaths and severe personal injuries should have put defendants on notice that people do climb on top of the trains, that individuals do not understand or may not be capable of understanding at the time the danger of the benign appearing wire, that people do not understand the risk of a catenary wire arcing even without it being touched, that the train itself defeats any efforts to "guard by location"[2] and many other relevant facts. These issues should have been evident to defendants by virtue of the prior accidents, which are similar enough to provide notice.

Moreover, when prior incidents are offered for notice, the required similarity of the prior incidents to the case at bar is more relaxed than when the prior incidents are used to prove negligence. The incidents need only be sufficiently similar to make the defendant aware of the dangerous situation. See B. Weinstein & M.A. Berger, *Weinstein's Federal Evidence* §401.08[2] (2d. Ed. 1999); K. Broun, *McCormick on Evidence* § 200 (6th Ed. 2006); Gardner v. Southern Ry. Systems, 675 F.2d 949, 952 (7th Cir. 1982); Young v. Illinois Central Gulf R.R., 618 F.2d 332, 339 (5th Cir. 1980); Wolf. v Proctor and Gamble Co., 555 F. Supp. 613, 621-22 (D.N.J. 1982); Campus Sweater & Sportswear v. M.D. Kahn Constr. Co., 515 F. Supp. 64, 88-91 (D.S.C. 1979); Young v. Illinois Cent. Gulf R.R. Co., 618 F.2d 332, 339 (5th Cir. 1980); Surles ex rel. Johnson v. Greyhound Lines, Inc., 474 F.3d 288, 297-298 (6th Cir. 2007); Grimes v. Mazda N. Am. Operations, 355 F.3d 566, 573 (6th Cir. 2004); Magayanes v. Terrance, 739 F. 2d 1131,

---

[2] Exhibits 29 – 31 attached to the Second Declaration of Russell X. Pollock contain Affidavits of Norman D. Bates, Richard Gill and James J. Rogers essentially verifying their expert reports and attachments. Dr. Gill's report, attached as Exhibit 12 to the first Declaration of Russell X. Pollock, discusses how guarding by location is defeated by parking a train under the catenary.

3

1136 (7th Cir. 1983); Julander v. Ford Motor Co., 488 F.2d 839, 846 (10th Cir. 1973); Ozark Air Lines v. Larimer, 352 F.2d 9 (8th Cir. 1965).

C.  **THE KLEIN ACCIDENT, SUMMARY JUDGMENT DECISIONS, TRIAL ON THE MERITS AND JUDGMENT ARE RELEVANT TO THIS CASE NOTWITHSTANDING THE FACT THAT AMTRAK AND NORFOLK SOUTHERN HAVE SOUGHT TO SANITIZE THE RECORD.**

Defendants argue that since the Summary Judgment Order was vacated in Klein (which is not apparent from the docket), this Court should not consider it in any way, shape or form. As was discussed in the principal opposition, on March 31, 2006 the Court denied Amtrak and Norfolk Southern's summary judgment motion, which asserted similar defenses as in this case. The Court then denied any effort to certify the issue for appeal prior to trial. The case was tried, a substantial judgment was entered for plaintiffs and post-trial motions were heard. Then, when the case was purportedly on appeal, defendants filed a number of "uncontested motions" to vacate prior orders, followed by uncontested motions to seal the motions to vacate the prior orders and an uncontested Motion that Westlaw and LesisNexis is to remove the decisions and orders from their databases.[3] All of these uncontested motions were allowed when a form order was submitted to the Court. Shortly thereafter, a Satisfaction of Judgment was entered on September 3, 2009 ending the lawsuit. From reviewing the decisions and not having access to the motions, it is difficult to understand what possible grounds there could be to deny the public access to these pieces of jurisprudence.

Regardless, the fact remains that Jeffrey Klein and Brett Birdwell[4] were tragically injured when they came between a parked train and a catenary wire, that Amtrak knew of the accidents well before this accident occurred, that after years of litigation, Amtrak knew the Court believed there were issues of fact to try and that the finder of fact indeed found Amtrak culpable. One of

---

[3] The undersigned did not obtain the cited decisions from Westlaw or LexisNexis.
[4] Both 17 years old at the time of their accident.

4

the claims in that case is that Amtrak should not have parked the train under a live wire because it was unnecessary. That is the same claim as has been asserted in this case. Amtrak ignored this notice, did nothing to reduce the risk and the accident happened again with tragic results.

**D.   DEFENDANTS' ARGUMENT THAT BRIAN HOPKINS WAS A TRESPASSER TO CHATTEL DOES NOT ALTER THE DUTY OWED TO HIM.**

Defendants cannot dispute that Brian Hopkins was permitted to be at South Station during the wee hours of the morning and that this area was open to the public all night long. [Plaintiffs' SOF ¶19, 73] However, they claim that he was a trespasser by virtue of the fact that he climbed on top of a *train* owned by Amtrak. M.G.L. c. 160, § 218 pertains to individuals on *real property*. Schofield v. Merrill, 386 Mass. 244, 245 (1982) addresses duties owed by landowners to individuals on *real property*. Neither the statute nor Schofield pertain to trespass to chattel. Massachusetts law does not alter the duty owed to a trespasser to chattel.

**Wherefore,** on behalf of the Hopkins family, plaintiffs respectfully request this motion be denied in its entirely and that they be allowed to have their claims heard by a jury.

> **BRIAN HOPKINS, LIANA HOPKINS AND SEAN HOPKINS, PLAINTIFFS,**
> By their attorneys,
>
> _____
> Russell X. Pollock, Esq. (Bar Code RP6970)
> Bergstresser & Pollock LLC
> 52 Temple Place
> Boston, MA 02111
> Tel: (617) 682-9211 / FAX (617) 451-1070
> russ@bergstresser.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2012, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for all parties of record.

_____
Russell X. Pollock (RP6970)