UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIAN HOPKINS, LIANA HOPKINS, and SEAN
HOPKINS,

                            Plaintiffs,

                -against-

NATIONAL RAILROAD PASSENGER
CORPORATION a/k/a AMTRAK and
MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY,

                          Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-2965 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Brian Hopkins, along with his parents Plaintiffs Liana and Sean Hopkins,

brought this action against Defendants National Railroad Passenger Corporation a/k/a Amtrak

("Amtrak") and Massachusetts Bay Transportation Authority ("MBTA") to recover for personal

injuries Brian sustained when he came into contact with an electrified catenary wire above a

parked Amtrak train in South Station in Boston, Massachusetts. (Notice of Removal (Dkt. 1) at

5.) Defendants have moved for summary judgment. (Mot. for Summ. J. (Dkt. 42).) For the

reasons explained below, their motion is GRANTED IN PART and DENIED IN PART.

I.     **BACKGROUND**

      For the purposes of this Memorandum and Order, the court construes the facts in the light

most favorable to Plaintiffs.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**A.      Facts**

The events leading to Hopkins'[1] injuries are largely undisputed.  (See Pl. 56.1 Statement

("Pl. 56.1"); Def. 56.1 Statement ("Def. 56.1").)  On July 9, 2006, at approximately 4:00 a.m.,

Hopkins climbed on top of a train parked at South Station in Boston, Massachusetts.  (Pl. 56.1

¶¶ 2-3.)  He came into contact with an electrified overhead catenary wire above the train and

2500 volts of electricity ran through his body.  (Id. ¶¶ 3, 10, 13.)  He has brought suit against

Amtrak, the owner and operator of the train and the wire, and MBTA, the owner and operator of

South Station.  (See Am. Compl. (Dkt. 12).)

1.      The Incident

At the time of the incident, Hopkins was twenty-four years old and had come to Boston

from New York to visit his friend Peter Arhangelsky.  (Id. ¶¶ 3, 24-25.)  Arhangelsky recalls that

the two of them were drinking over the course of the evening and were, by midnight or 1 a.m.,

"by all standards at that point very drunk."  (Id. ¶ 7 (quoting Dep. of Peter Arhangelsky, Exhibit I

to Fusaro Decl. (Dkt. 43-2) ("Arhangelsky Dep.")) at 81:19-23).)  After being out all evening,

the two returned to Arhangelsky's house in the early hours of the morning, where they had

another drink.  (Id. ¶ 8.)  Hopkins left Arhangelsky's apartment between 2:30 and 3:00 a.m.  (Id.

¶ 9.)  According to Arhangelsky, Hopkins indicated that he had decided he was going to return to

New York.  (Id.)  After Hopkins left, Arhangelsky waited approximately ten or fifteen minutes in

the hope that Hopkins would return, then took a cab to South Station to look for Hopkins.  (Id.)

He was unable to locate Hopkins at the station.  (Id.)

Hopkins has no recollection of how he traveled to South Station after leaving his friend's

apartment.  (Id. ¶ 10 (quoting Dep. of Brian Hopkins (Ex. G to Fusaro Decl. (Dkt. 43-2)) ("Pl.

Dep.") at 124:19-22).)  He recalls, from events earlier in the day, that Arhangelsky lived

---

[1]        The court will refer to Brian Hopkins as "Hopkins," and to his parents as "Liana and Sean Hopkins."

approximately a half-an-hour to forty-five minute walk from South Station.  (Pl. Dep. at 102:19-23.)  Hopkins has no knowledge of how he came to be on top of the train.  (Id. at 125:19-22.)

Neither party has identified any witness who saw how Hopkins got on top of the train.  According to the Journal Incident Report of the MBTA Police Officer who responded to the scene, witnesses had observed Hopkins in the South Station terminal prior to the incident walking to the platform of a train on track 7, then looking at the closed doors of the train.  (Journal Incident Report (Ex. 2 to Pollock Decl. (Dkt. 47-1)) at 6.)  Shortly thereafter, emergency services were called for a fire in the terminal.  (Id.)  Paramedics responded to the scene to find an unknown male, later identified as Hopkins, engulfed in flames atop the train on track 7.  (Id.)  Hopkins was taken to the hospital.  (Pl. 56.1 ¶ 11.)  Hospital records reflect that Hopkins' blood alcohol level after the incident was a 2544 mg/L, and doctors at the hospital advised MBTA Detective Andrea Purcell that Hopkins' blood alcohol level was .26 or .28 percent.[2]  (Id.)  Hopkins survived the incident, but suffered burns to 85% of his body, and his right arm and right leg were amputated.  (Id. ¶ 14.)

2.      Conditions and Safety Measures at South Station

South Station is owned and operated by MBTA.  (Id. ¶ 25.)  The station is open twenty-four hours a day.  (Amtrak Rule 30(b)(6) Dep. (Ex. 8 to Pollock Decl. (Dkt. 47-2)) ("Amtrak Dep.") at 87:17-24.)  Pursuant to a lease and operating agreement, Amtrak energizes and operates the electrified rail service that runs through South Station.  (Pl. 56.1 ¶ 26.)  Amtrak installed, owned, and operated the catenary wire that caused Hopkins' injuries.  (See MBTA Rule 30(b)(6) Dep. (Ex. 9 to Pollock Decl. (Dkt. 47-2)) ("MBTA Dep.") at 32:17-22, 78:22-24.)

---

[2]      To place these levels in some context, the court takes judicial notice of the fact that .08 percent is the legal limit for operation of a vehicle in Massachusetts.  See "Operating Under the Influence of Intoxicating Liquor of with a Blood Alcohol Level of .08% or Greater," Massachusetts Court System Criminal Model Jury Instructions, http://www.mass.gov/courts/courtsandjudges/courts/districtcourt/jury-instructions/criminal/pdf/5300-oui-liquor-or-08-percent-blood-alcohol.pdf (last visited Feb. 26, 2013).

The train upon which Hopkins was found was an Acela train scheduled to leave the station that day at 1:00 p.m.  (Pl. 56.1 ¶ 22.)  The doors to the train were closed.  (Journal Incident Report at 6.)  The catenary wire that caused Hopkins' injuries was energized all night.  (Pl. 56.1 ¶ 20.)  It is Amtrak's standard procedure to leave such wires energized all the time unless there is work going on that requires the power to be off.  (Amtrak Rule 30(b)(6) Dep. (Ex. M. to Fusaro Supp. Decl. (Dkt. 50-1)) ("Amtrak Dep.") at 92:20-93:22.)  Amtrak gives special training to its employees who work in the vicinity of electrified wires, and "the danger of working around energized wire is . . . drummed into them every day."  (Id. at 32:24-33:2.)

There are no Amtrak police officers assigned to South Station.  (Id. at 40:3-15.)  Officers maintain a presence "at various times and [in] various amounts."  (Id.)  There are surveillance cameras in South Station, which are owned and controlled by MBTA.  (Id. at 52:6-20.)  The parties agree that prior to Hopkins' injuries, there had never been another incident of an individual climbing atop a train and being electrocuted by a catenary wire in South Station, or anywhere else in Massachusetts.  (Pl. 56.1 ¶ 12.)

Plaintiffs assert that Hopkins had "climbed between the cars of the Amtrak Acela train" to get to the top of the train.  (Id. ¶ 23.)  According to Amtrak, "between the two cars is the only way [to get on top of the train].  There's no ladders or anything like that up there."  (Amtrak Dep. at 60:15-23.)  MBTA Detective Tim O'Toole, who investigated the incident, testified that the most plausible explanation for how Hopkins got on top of the train was that he had climbed

between the two train cars, using the lines between the cars as a ladder to climb up.[3]  (Dep. of

Tim O'Toole (Ex. 7 to Pollock Decl. (Dkt. 47-2)) ("O'Toole Dep.") at 75:3-76:3.)

### 3.    Plaintiffs' Evidence of Prior Incidents and Expert Opinions

In opposition to Defendants' summary judgment, Plaintiffs submitted lengthy "additional

facts" to support their claims.  (See Pl. 56.1 ¶¶ 13-73.)  These provided two main additional

sources of facts to be considered:  (1) Plaintiffs' Rule 26(a)(2) Disclosure of Liability Expert

Testimony, which described various experts' testimony about what Defendants could have and

should have done to prevent Hopkins' injuries (see id. ¶¶ 31-49 (describing the conclusions of

the experts); Expert Disclosures (Ex. 12 to Pollock Decl. (Dkt. 47-2) ("Expert Disclosures"));

and (2) documents produced by Amtrak regarding previous incidents where individuals were

electrocuted after climbing on top of a train and coming into contact with a catenary wire (see Pl.

56.1 ¶¶ 50-61 (describing the previous incidents); Exs. 14-24 to Pollack Decl. (Dkts. 47-4,

47-5)).

### B.    Procedural History

Plaintiffs brought suit against Amtrak in the Supreme Court of the State of New York,

Queens County, in July 2008, alleging negligence and gross negligence, recklessness,

willfullness, and wantonness for the injuries Hopkins suffered, and loss of consortium for the

trauma suffered by Hopkins' parents Liana and Sean Hopkins.  (See Not. of Removal.)  Amtrak

---

[3]     O'Toole explained that:

> [I]in that area between the two trains there's all kinds of—I don't know if they are wires or air
> lines for the brakes, but the things that couple the cars together.  Those are on the sides which, if
> you wanted to, you could probably climb up.  There's a ladder.  There's enough places in there for
> you to grab and put your feet in as opposed to trying to scale the outside of the train.

O'Toole Dep. at 75:18-76: 3.  Because another witness testified that there is no ladder to the top of the train, and no
party argues that there was a ladder to reach the top, the court takes the statement "[t]here's a ladder" in the context
of O'Toole's statement to indicate that the wires and lines could be used as a ladder, not that there was an actual
ladder.

removed the action to this district on July 16, 2008, invoking this court's jurisdiction under 28 U.S.C. § 1349 because Amtrak was created by an Act of Congress and more than one-half of its capital stock is owned by the United States.  (Id.; see also 49 U.S.C. § 24101 et seq.; 28 U.S.C. §§ 1331, 1349.)

Amtrak answered the Complaint (Answer (Dkt. 3)), and shortly thereafter agreed to Plaintiffs' request to file an Amended Complaint, which added MBTA as a defendant and asserted the same claims against MBTA (Stip. (Dkt. 9); Am. Compl. (Dkt. 12)).

Magistrate Judge Robert M. Levy set a discovery schedule, and, on consent of the parties, ordered that expert damages discovery be deferred until after summary judgment motions had been decided.  (Oct. 21, 2009, Minute Entry.)  Judge Levy also ordered, on consent of the parties, that depositions of liability expert witnesses would be deferred until after a decision on summary judgment.  (Jan. 9, 2012, Minute Entry; see also Jan. 26, 2012, Def. Ltr. (Dkt. 40).)

Defendants requested a pre-motion conference in anticipation of their motion for summary judgment, and the court set a briefing schedule for the motion.  (See Mot. for Conf. (Dkt. 39); Jan. 10, 2012, Order (denying request for a pre-motion conference as moot, giving Defendants leave to file motion, and setting motion schedule).)  Defendants moved for summary judgment (Def. Mot.) and Plaintiffs opposed (Pl. Opp'n (Dkt. 48)).  After Defendants replied (Def. Reply (Dkt. 51), Plaintiffs received permission from the court to file a sur-reply (see Order (Dkt. 54); Pl. Sur-Reply (Dkt. 56)).

## II.     CHOICE OF LAW

In their summary judgment memorandum, Defendants allege that this court has jurisdiction over this case premised on diversity of citizenship,[4] and thus New York's choice-of-law rules apply.  (Def. Mem. (Dkt. 45) at 8 (citing cases).)  Defendants further contend that the application of these rules determines that Massachusetts law governs this action.  (Id. at 8-9.)  Plaintiffs include no choice-of-law analysis, but apply Massachusetts law to their claims.  (See Pl. Opp'n at 16-17.)

In a case before a federal court sitting in New York where the court's jurisdiction is premised on diversity of citizenship, New York's choice-of-law rules apply to determine the substantive law governing the parties' claims.  Bakalar v. Vavra, 619 F.3d 136, 139 (2d Cir. 2010).  New York uses an "interest analysis" for tort claims.  Globalnet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 384 (2d Cir. 2006).  If the relevant tort law involves appropriate standards of conduct, as opposed to allocation of losses from admittedly tortious conduct, the interest generally lies with the law of the state where the tort occurred.  Id. (citing Cooney v. Osgood Mach, Inc., 81 N.Y.2d 66, 72 (1993)).  Here, the alleged negligence and recklessness occurred in Massachusetts, and thus the interest analysis indicates that Massachusetts law should apply.  Browne v. Marriott Int'l Hotels, Inc., No. 07-CV-2228 (NGG), 2010 WL 3602844, at *2 (E.D.N.Y. Sept. 7, 2010) (concluding that in a diversity case where the tort at issue was alleged to have occurred in Massachusetts, the court should apply Massachusetts substantive law).

---

[4]      Although Defendants originally removed this action under federal question jurisdiction because Amtrak was created by Act of Congress, the Amended Complaint properly pleads diversity jurisdiction under 28 U.S.C. § 1332.  (See Not. of Removal at 1-2; Am. Compl. ¶¶ 2-9.)

III.    **SUMMARY JUDGMENT**

A.    **Standard**

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The burden to make this showing rests upon the party moving for summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  "[T]he court must draw all reasonable inferences in favor of the nonmoving party."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).

A fact is material if its existence or non-existence "might affect the outcome of the suit under the governing law," and an issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  A genuine issue is created by "specific facts" grounded in testimony or other admissible evidence, not by "mere allegations or denials" of the adverse party's pleadings, id., "by the presentation of assertions that are conclusory," Patterson v. Cnty. of Onieda, N.Y., 375 F.3d 206, 219 (2d Cir. 2004), or "by conjecture[] or speculation" from the non-movant, Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

Summary judgment must be granted "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support [her] case is so slight."  Gallo v. Prudential Res. Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994).  In particular, it must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In such a situation, "there can be 'no genuine issue as to any

material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

**B.     Analysis**

1.     <u>Hopkins' Negligence Claims</u>

Defendants have moved for summary judgment on Hopkins' negligence claims on the

ground that under Massachusetts law, owners of land cannot be liable in negligence to a

trespasser, and Hopkins was a trespasser when he suffered his injuries.  (Def. Mem. at 9-11.)

To establish a negligence claim under Massachusetts law, a plaintiff bears the burden of

proving duty, breach of duty, causation (actual and proximate), and damages.  <u>Beausoleil v.

Mass. Bay Transp. Auth.</u>, 138 F. Supp. 2d 189, 179 (D. Mass. 2001) (citing <u>Bennett v. Eagle

Brook Country Store, Inc.</u>, 557 N.E.2d 1166, 1168 (Mass. 1990)).  The nature of the duty of care

a defendant owes to a particular plaintiff is a question of law for the court to decide.  <u>Beausoleil</u>,

138 F. Supp. 2d at 197-98 (citing cases).  In the absence of a duty of care, "there can be no

actionable negligence."  <u>Id.</u> (quoting <u>Dhimos v. Cormier</u>, 509 N.E.2d 1199 (Mass. 1987)).

Thus, the critical issue for Plaintiffs' negligence claim—and the critical issue in many

cases involving injuries sustained by persons on railroad property in Massachusetts, <u>see, e.g.</u>,

<u>Beausoleil</u>, 138 F. Supp. 2d at 197-98 (citing cases)—is whether Defendants owed a duty to

Hopkins.  Under Massachusetts law, a landowner's duty to a person on his land is determined by

whether that person had permission to be there.  <u>See</u> <u>Schofield v. Merrill</u>, 435 N.E.2d 339,

245-46 (Mass. 1982).  An adult trespasser "is entitled to no greater duty of care from one with a

right of control over land (typically the landowner) than that he refrain from willful, wanton or

reckless disregard for the trespasser's safety."[5]  Id.  Accordingly, a landowner cannot be liable to

an adult trespasser for injuries resulting from the landowner's negligence.[6]  Id.; see also

Papadopoulos v. Target Corp. et al, 930 N.E.2d 142, 146 (Mass. 2010).  If a plaintiff injured by

the railroad is deemed a trespasser at the time of his injury, "the duty owed to him . . . was only

to avoid willful, wanton or reckless conduct."  Menard v. CSX Transp., Inc., 698 F.3d 40, 43 (1st

Cir. 2010).

      Under Massachusetts law, a trespasser is "a person who enters or remains upon land in

the possession of another without a privilege to do so, a privilege created by the possessor's

consent or otherwise."  Beausoleil, 138 F. Supp. 2d at 197 (citing Gage v. Westfield, 532 N.E.2d

62 (Mass. 1988)).  "Under Massachusetts law, it is a crime to be on railroad tracks except at an

established crossing."  Id. (citing Mass. Gen. Laws ch. 160, § 218 ("Whoever knowingly,

without right is present, stands, walks, or rides a . . . vehicle on the right-of-way, bridge, or other

property of, or used or controlled by any railroad corporation . . . shall be fined $100.")).  "A

person who knowingly and without invitation leaves the platform of a railway station and

proceeds along the tracks ceases to be a passenger and becomes a trespasser."  Id. (citing

McConville v. Mass. Bay Transp. Auth., 852 F. Supp. 1, 2 (D. Mass. 1994); Gage, 532 N.E.2d at

---

[5]     Exceptions to this principle are that landowners owe a higher duty to certain foreseeable child trespassers and trespassers who are known to be in a position of peril.  Schofield, 435 N.E.2d at 247.  Here, however, Plaintiffs do not argue—nor could they, based on these facts—that Hopkins was a child, or known to Defendants to be in a position of peril.  (See Pl. Opp'n at 16-17; Pl. Sur-Reply at 5.)

[6]     The court notes that this common law distinction has been codified with respect to wrongful death actions arising from deaths occurring on the railroad.  The Massachusetts wrongful death statute provides that a wrongful death claim may be brought against someone who, by negligence or willful, wanton, or reckless act, causes the death of another person.  See Boyd v. National R. R. Passenger Corp., 845 N.E.2d 356, 362 (Mass. 2006) (citing Mass. Gen. Laws ch. 229 § 2).  The statute includes a specific exemption to liability for railroads, stating that "a person operating a railroad shall not be liable for negligence in causing the death of a person while walking or being upon such railroad contrary to law or to the reasonable rules and regulations of the carrier."  Id.  "However, even where a decedent is a trespasser, a railroad can be held liable for damages if the conduct of its agents that caused such death was willful, wanton, or reckless."  Id.

62; <u>Lynch v. Boston & Maine R.R.</u>, 116 N.E. 248 (Mass. 1917); <u>Boden v. Boston Elevated Ry.</u>
<u>Co.</u>, 91 N.E. 870 (Mass. 1910)).

  Defendants argue that Hopkins was a trespasser because he was on the railroad's property
without permission and he committed the offense of trespassing on railroad property as defined
by Massachusetts statute.  (Def. Reply at 3-4.)  Plaintiffs argue that he was not a trespasser
because:  (1) the Massachusetts crime of trespassing on railroad property only applies to real
property and Hopkins was on personal property (the train); (2) Hopkins was lawfully present in
the station, which is open to the public twenty-four hours a day; and (3) he was never charged
with trespassing.  (Pl. Opp'n at 16-17.)

  For the following reasons, the court concludes that Hopkins was a trespasser when he
was injured atop the train.  First, according to general principles of tort law, a trespass may be
committed "on, beneath, or above the surface of the earth."  Restatement (Second) of Torts
§ 159(a) (1965).  Accepting Plaintiffs' argument that Hopkins was not a trespasser on the tracks
because he was on top of the train would be akin to accepting the notion that a person standing
atop a car on an owner's property is not a trespasser to the owner's land because he is atop
personal property rather than on the real property.  Hopkins left the platform and proceeded onto
the tracks—he had no ticket to be a passenger on the train and yet was on the train, which was on

the tracks.[7]  Therefore, basic logic and principles of tort law indicate that he was indeed a trespasser on the train tracks.[8]

Moreover, in cases brought by or on behalf of adult individuals who were injured on train tracks, courts applying Massachusetts law consider the individuals to be trespassers unless the railroad took affirmative action that would warrant a reasonable belief that a passenger had a right to cross the tracks.  See, e.g., Menard, 698 F.3d at 44 ("Massachusetts law makes it a crime to walk across railroad tracks anywhere except at established crossings, and its courts have taken this to refute any claim of an implied license to walk on any other point along the tracks.") (citation omitted) (vacated and remanded on other grounds); Beausoleil, 138 F. Supp. 2d at 198-99 (concluding that under Massachusetts law, plaintiff was a trespasser when she crossed the railroad tracks); Harris v. Nat'l R.R. Passenger Corp., No. 91-CV-12841, 1993 WL 596260, at *2 (D. Mass. Dec. 30, 1993) (concluding that a drunk man who stood on the railroad tracks and was hit by a train was a trespasser); Miller v. Boston and Maine Corp., 397 N.E.2d 341, 342 (Mass. 1979) (where crossing was marked on railroad's maps, marked with a crossing sign, and laid with planks, the court held that the individual injured on the tracks was "more than a trespasser").  Although all of these cases involved plaintiffs who had crossed the tracks or stood on the tracks directly, their logic implies that an individual who crosses the tracks by climbing over a train is trespassing.

---

[7]      Trespass occurs even though a trespasser may not understand that what he is doing is wrong.  See Harris v. Nat'l R.R. Passenger Corp., No. 91-CV-12841, 1993 WL 596260, at *2 (D. Mass. Dec. 30, 1993) (citing Prosser and Keeton on the Law of Torts § 13, at 75 (5th ed. 1984)).  Therefore, whether Hopkins had—or was capable of forming—the intent to trespass is of no consequence.

[8]      Plaintiffs also argue that Hopkins was not a trespasser within the meaning of Massachusetts law because the Massachusetts offense of trespassing on railroad property pertains to individuals on real property, and Hopkins was trespassing to chattel by being on the train.  (See Pl. Sur-Reply at 5.)  As discussed above, this argument overlooks the fact that Hopkins was atop the train, which was on the real property of the railroad.  Thus, logically speaking, he was still on the real property of the railroad.

Additionally, the reasoning of the court in <u>Beausoleil</u>, applying Massachusetts law to determine that the plaintiff was a trespasser on the railroad tracks, also indicates that Hopkins was a trespasser.  The <u>Beausoleil</u> court reasoned that the plaintiff was a trespasser because: (1) she entered the property of another without privilege to do so; and (2) the defendants had not taken actions that would cause a reasonable person to believe that he or she had a right to cross the tracks at that point.  138 F. Supp. 2d at 199.  Hopkins had no ticket to be on the train, and no other privilege allowing him to be on the tracks.  Thus, he left the platform and entered the property of the railroad (the tracks) without the privilege to do so.  Defendants' actions in leaving the train parked on the tracks overnight with the doors closed would not cause a reasonable person to believe that he had the right to be *in* the parked train without a ticket, let alone to believe that he had the right to climb *on* the train.

None of the authority Plaintiffs cite in support of their argument warrants a different conclusion.  <u>Papadapoulos</u>, which Plaintiffs cite for the proposition that Hopkins was not a trespasser, merely abolishes the distinction between natural and unnatural accumulations of snow and ice on property, and reaffirms the conclusion that property owners have a duty to exercise reasonable care towards all *lawful* visitors.  930 N.E.2d at 144, 146-54.  Plaintiffs also argue that the Massachusetts Wrongful Death Act, which provides that "a person operating a railroad shall not be liable for negligence in causing the death of a person while walking or being upon such railroad contrary to law or to the reasonable rules and regulations of the carrier," Mass. Gen. Laws ch. 229 § 2, has never been applied to any situation other than "an individual crossing or walking on the tracks" (Pl. Opp'n at 17 (citing <u>Beausoleil</u>, 138 F. Supp. 2d; <u>Boyd v. Nat'l Passenger R.R. Corp. et al.</u>, 845 N.E.2d 356 (Mass. 2006))).  But even so, the wrongful death

13

statute does not alter the common law rule that the tracks are the property of the railroad and thus persons on the tracks are trespassers.

Plaintiffs argue that "it is clear from the evidence that the track area of South Station is open to the public 24 hours per day, 7 days per week" and that Defendants "want to label anyone in the track without a train ticket to be a trespasser."  (Pl. Opp'n at 17.)  This argument, however, overlooks the important difference between the *platform* and the *tracks*.  As discussed above, under Massachusetts law, "[a] person who knowingly and without invitation leaves the platform of a railway station and proceeds along the tracks ceases to be a passenger and becomes a trespasser."  Beausoleil, 138 F. Supp. 2d at 198 (citing cases).  Because Massachusetts law recognizes the distinction between the platform and the tracks, this court must as well.[9]

For the reasons stated above, Hopkins was a trespasser when he suffered his injuries on Defendants' property, and Defendants owed him only a duty only to avoid willful, wanton, or reckless conduct.  Menard, 698 F.3d at 43.  Therefore, Defendants' motion for summary judgment as to Hopkins' negligence claim must be granted.

2.      Hopkins' Claims that Defendants Were Reckless, Willful, and Wanton

Defendants have also moved for summary judgment on Hopkins' recklessness claims on the grounds that:  (1) Hopkins' illegal conduct was the sole cause of his injuries; and (2) Plaintiffs have no evidence that Defendants' conduct was reckless, willful, or wanton.  (See Def. Reply.)  In opposition, Plaintiffs argue that both of these issues are questions of fact for the jury.  (See Pl. Opp'n at 18-22; Pl. Sur-Reply at 1-3.)

---

[9]      Plaintiffs' argument that Hopkins was never charged with trespassing is similarly unavailing.  Plaintiffs cite no cases considering whether a plaintiff was charged with trespassing as a factor for whether he was a trespasser as a matter of tort law.  What is more, in many of the cases where this issue arises, the injured parties have died, and thus whether or not they were charged with trespassing is of no matter.

a.      *Hopkins' Conduct as the Cause of His Injuries*

Defendants argue that the court must grant summary judgment on Hopkins' recklessness claim because under Massachusetts law, public policy dictates that criminal conduct can bar recovery for damages.  (Def. Mem. at 11.)  Specifically, Defendants argue that Hopkins' trespass on Amtrak's equipment and on the railroad tracks was a criminal act, and was the sole proximate cause of his injury.  (Id.)

Under Massachusetts statute, a plaintiff's violation of a statute, ordinance, or regulation shall not "as a matter of law and for that reason alone" bar a plaintiff from recovery for negligence, but "shall be considered as evidence of negligence of that plaintiff."  Mass. Gen. Laws ch. 231, § 85.  This comparative negligence statute, however, does not apply to claims of intentional or willful, wanton, or reckless conduct.  See Boyd, 845 N.E.2d at 363 n.11; Zeroulias v. Hamilton Am. Legion Assocs., 705 N.E.2d 1164, 1166 (App. Ct. 1999).

In Ryan v. Hughes-Ortiz, 959 N.E.2d 1000 (Mass. App. Ct. 2012), the Massachusetts Appeals Court concluded that summary judgment was proper where the plaintiff died an accidental death from a gunshot wound after stealing a gun from the defendant and plaintiff's criminal conduct acted as a bar to recovery for wrongful death and negligence.  Id. at 1002-03.  The court reasoned that the plaintiff had violated state law by stealing the firearm and, as a convicted felon, violated federal law by being a felon in possession of a firearm when he accidentally fired the gun that killed him.  Id. at 1004-05.  The court concluded that the Massachusetts comparative negligence statute did not require a different result because it allows exceptions where the decision to bar a cause of action is based on the plaintiff's violation of a criminal statute but also on public policy considerations.  Id.  The court found this to be in line with the Restatement of Torts, which bars a plaintiff from recovery for harm caused by violation

15

of a statute where the harm resulted from a risk of the type against which the statute was intended to give protection.  Id. (quoting Restatement (Second) of Torts § 889 cmt. b. (1977)). Defendants cite to this case and several other cases where courts concluded that a plaintiff's illegal conduct was a proximate cause of injury and barred recovery for negligence, and argue that they require granting summary judgment on Plaintiffs' claims.  (Def. Mem. at 11 (citing Reynolds v. Stillman, 138 N.E.2d 634, 635 (Mass. 1956) (plaintiff's illegal act of coasting down his driveway on a sled was "so intimately connected with his injury as a proximate cause that as a matter of law he [was] barred from recovery" in negligence for injuries due to being hit by defendant's car after coasting); Scott v. Boston Elevated Ry. Co., 60 N.E.2d 5, 6 (Mass. 1945) (plaintiff's act of trespass on a moving bus was "so intimately connected with his injury as a proximate cause that as a matter of law he is barred from recovery on the first count based upon negligence" for his injuries due to getting caught in the bus wheels)).)

Defendants' authority concerning the state of comparative negligence and a plaintiff's criminal conduct as a bar to recovery address only claims of negligence.  Defendants do not provide any Massachusetts law for the proposition that these rules apply in the recklessness context, and the court is aware of no such authority.  (See Def. Mem. at 11-14; Def. Reply at 9-10.)  The court cannot, without more, extend principles governing recovery in negligence to apply to Plaintiffs' claims of recklessness.

Defendants also argue that federal and state courts in New York have repeatedly held that trespassing on railroad property constitutes an intervening act that breaks the causal connection between a plaintiff's injury and a defendant's alleged wrongdoing.  (See Def. Mem. at 12-13; Def. Reply at 10.)  Defendants primarily rely on Gil ex rel. Sosa v. National R.R. Passenger Corp., No. 02-CV-2687 (NG), 2007 WL 2230176 (E.D.N.Y. Aug. 1, 2007), where a court in this

district applying New York law granted summary judgment to defendants in a case where the plaintiff suffered injuries after coming in contact with an electrified catenary wire while trespassing in a railyard.  2007 WL 2230176, at *5.  New York law does not vary a landowner's duty with the status of the entrant, but "appl[ies] a single duty of reasonable care, where foreseeability is taken into account in the use of the land and the possibility of the injury."  Id. at *3.  The issue of whether a defendant's conduct was a substantial factor in bringing about a plaintiff's injuries is generally a question for the jury, but can be decided as a matter of law "where only one conclusion may be drawn from the established facts."  Id.  Plaintiff entered the rail yard by going around a fence, and passed over three sets of tracks into defendant Amtrak's property.  Id. at *1-2.  He and his friends explored the property looking for graffiti for about an hour, then entered a tunnel and climbed along a metal railing about fifteen feet above the tracks in order to view the graffiti in the tunnel.  Id. at *2.  While on the railing, he lost his balance and grabbed onto an overhead catenary wire to stabilize himself, and was severely injured by the electrified wire.  Id.

The court reasoned that, although Amtrak knew of prior incident reports involving trespassers injured by catenary wires, it did not have any prior reports specific to that rail yard, and thus was not required to "protect plaintiff from his own folly in electing to expose himself to a readily observable condition."  Id. (citation omitted).  The court concluded that under New York law, plaintiff's reckless conduct was of such an extraordinary nature that it constituted a superseding cause and relieved defendants of any liability.  Id.  Defendants argue that the facts of Gil are sufficiently similar to the facts of this case, and require this court to grant summary judgment on Plaintiffs' claims.  (See Def. Mem. at 12.)

17

The similarity of some of the facts of <u>Gil</u> to this case does not change the fact that it is an outcome based on New York law.  <u>See Gil</u>, 2007 WL 2230176, at *3-5 (applying New York law).  Defendants make no attempt to show that the New York law applied in that case is similar to Massachusetts law.  It is indeed a well-established principle of tort law that, generally speaking, "one is not barred from recovery for interference with his legally protected interests merely because at the time of the interference he was committing a tort or a crime."  Restatement (Second) of Torts § 889.  But at the same time, "[t]he fact that the plaintiff has failed to exercise reasonable care for his own safety does not bar his recovery unless his harm results from one of the hazards which make his conduct *negligent*."  Restatement (Second) of Torts § 468 (emphasis added).

Thus, Defendants have not demonstrated that under Massachusetts law the comparative negligence principles or public policy bar to liability extend to claims of recklessness.  Accordingly, the court concludes that Defendants have not demonstrated that summary judgment must be granted on Hopkins' recklessness claim based on his own illegal conduct.

b.     *Admissibility of Previous Incidents to Show Notice*

In their Statement of Facts, Plaintiffs detail five prior incidents involving persons who suffered injuries after climbing on top of trains and coming into contact with electrified wires.  (<u>See</u> Pl. 56.1 ¶¶ 50-61.)  Plaintiffs argue that these incidents show that Defendants had notice of the danger posed by parking trains under electrified catenary wires.  (Pl. Opp'n at 9-13; Pl. Sur-Reply at 2-3.)  Defendants argue that because the previous incidents were not substantially similar to the one at issue here, the evidence is not admissible for the purpose of showing notice and thus Plaintiffs cannot rely on this evidence in their opposition to summary judgment.  (Def. Reply at 6-7.)  Therefore, as an initial matter, the court must determine whether evidence of

18

these prior incidents is admissible and therefore properly considered on summary judgment.  See

Fed. R. Civ. P. 56(c)(1)-(2).

As a general matter, evidence of prior accidents is admissible to show a defendant's

knowledge of a dangerous condition, but the basic principles of relevancy "require that the other

instances of injuries received should have occurred under substantially similar circumstances."

Edwards v. Consol. Rail Corp., 567 F. Supp. 1087, 1105 (D.D.C. 1983) (citing 2 Wigmore,

Evidence § 458, at 573; see also McKinnon v. Skil Corp., 638 F. 2d 270, 277 (1st Cir. 1981)

("Evidence of prior accidents is admissible [to show knowledge of prior accidents] only if the

proponent of the evidence shows that the accidents occurred under circumstances substantially

similar to those at issue in the case at bar.").  The requirement is "probably at its strictest" when

evidence is sought to be admitted to show the dangerousness of a particular condition or

situation, and the requirement is "much relaxed" when the evidence is proffered to show notice.

Edwards, 567 F. Supp. 1087 at 1105.  Whether evidence is sufficiently similar is to be

determined by the court.[10]  Id. at 1106 (citing Fed. R. Evid. 401-03).

As for the admissibility of the evidence of notice, Plaintiffs argue that for the evidence to

be admissible, the prior incidents need only be "sufficiently similar to make the defendant aware

of the dangerous situation."  (Pl. Sur-Reply at 3.)  Defendants argue, citing Edwards, that the

prior incidents are not admissible because they did not occur in the same location as the incident

at issue.  In Edwards, the court concluded that a plaintiff's trespass atop a train—leading to his

injury when he came in contact with a catenary wire—was not foreseeable as a matter of law

---

[10]    Although the Federal Rules of Evidence govern this evidentiary issue, see Hogan v. Novartis Pharms.
Corp., No. 06-CV-260 (BMC), 2011 WL 1336566, at *3 (E.D.N.Y. Apr. 6, 2011), the court notes that the
conclusion would be the same under Massachusetts law, see McKinnon, 638 F.2d at 277 (citing cases).
Massachusetts courts consider this type of evidence to be "open to grave objections" because "its persuasive force
depends upon similarity in the circumstances of different injuries."  Robitaille v. Netoco Comm. Theatres of N.
Attleboro, Inc., 25 N.E.2d 749 (Mass. 1940).

because the accident occurred in a remote site that was bounded on almost all sides and difficult to reach, and did not commonly have standing trains on the tracks.  567 F. Supp. at 1107. Therefore, the court concluded that previous incidents where children had climbed on standing trains in storage yards near public attractions with no fences or natural bars to access would not be relevant to notice, and thus could not be considered at the summary judgment stage.  Id.

Out of all of the incidents Plaintiffs offer, only one occurred in a station:  in the "Bengi incident," an individual was injured after standing atop an Amtrak train in Penn Station in New York and coming into contact with a catenary wire.  (See Pl. 56.1 ¶ 50.)  The court concludes, based on the information presented, that this incident is similar enough in nature to the instant case to serve as notice that members of the public might move from the platforms onto trains parked in stations.  It is a different matter to have notice that individuals might be injured when they climb on trains in a rail yard or freight yard than it is to have notice that individuals might be injured when they climb on a waiting train in a public station.  (Def. Reply at 7.)  Indeed, Plaintiffs argue that Defendants' misconduct involved disregarding the risk that individuals in the station would not appreciate the danger of the electrified wire, and thus failing to put up signs, close the platform, or have more security in the station.  (See Pl. Opp'n at 25; Pl. Sur-Reply at 1-2.)  Accordingly, notice of prior incidents where the risk involved leaving trains under electrified wires in a rail yard or freight yard, where the notice and security at issue would likely be very different than that of an enclosed public station, is not relevant.  Except for the Bengi incident, all of the incidents occurred in rail yards or freight yards outside of stations, and, in some cases, outside of towns.  (See Pl. 56.1 ¶¶ 51-56.)  Therefore, they are not sufficiently similar to be admissible to show notice of an alleged dangerous condition.  Therefore, the court

will consider only the Bengi incident in contemplating Defendants' motion for summary

judgment on Hopkins' recklessness claim.

        c.     *Failure to Prove the Elements of Recklessness*

Summary judgment would be warranted if Defendants could show that Plaintiffs could

not prove an essential element of the recklessness claim.  See Kourouvacilis v. Gen. Motors

Corp., 575 N.E.2d 734, 739 (Mass. 1991) (citing Fed. R. Civ. P. 56; Celotex, 477 U.S. at 319,

323-24).  According to Plaintiffs, Defendants were reckless because they left the train at the

station under the catenary wire all night; they failed to turn off the electricity to the catenary wire

though it was possible to do so; they failed to secure the track area; and they failed to issue any

warnings with respect to the catenary wire.  (Pl. Opp'n at 25.)

Under Massachusetts law, Defendants had a duty not to operate the railroad recklessly

and can be held liable if they failed to satisfy that duty.  Beausoleil, 138 F. Supp. 2d at 205

(citing Mass. Gen. Laws ch. 229 § 2; McConville, 852 F. Supp. at 2; Gage, 532 N.E.2d at 68;

Corrado v. N.Y., New Haven & Hartford R.R. Co., 131 N.E.2d 201, 202 (Mass. 2001)).

The Supreme Judicial Court of Massachusetts has adopted the definition of "reckless

disregard of safety" set forth in the Second Restatement of Torts:

> The actor's conduct is in reckless disregard of the safety of another if he does an
> act or intentionally fails to do an act which is his duty to the other to do, knowing
> or having reason to know of facts which would lead a reasonable man to realize,
> not only that his conduct creates an unreasonable risk of physical harm to another,
> but also that such risk is substantially greater than that which is necessary to make
> his conduct negligent.

Boyd, 845 N.E.2d at 362-63 (citing Restatement (Second) of Torts § 500).  "Reckless conduct

involves a degree of risk and the voluntary taking of that risk that is so great that, compared with

negligent conduct, the difference is not merely one of degree but of kind."  Montes v. Mass. Bay

Transp. Auth., 843 N.E.2d 611, 615 (Mass. 2006).

In Massachusetts, whether a party has acted recklessly is typically an issue for the jury, and is not decided on summary judgment.  See Manning, 582 N.E.2d at 946; Inferrera v. Town of Sudbury, 575 N.E.2d 82, 86 (Mass App. Ct. 1991) ("[S]ummary judgment is seldom sought or granted in negligence actions . . . and the rule is equally applicable to actions involving allegedly reckless conduct.").  But this rule is not absolute.  See, e.g., Scanlon v. Dep't of Army, 277 F.3d 598, 600-01 (1st Cir. 2002) (applying Massachusetts law to affirm the district court's conclusion on summary judgment that the Army's failure to properly secure a hole that had caused plaintiff to fall did not create the "level of dangerousness that warrants liability").

Because determining recklessness under Massachusetts law involves analyzing the kind of risk allegedly taken, courts applying this standard analyze the gravity of the danger posed by the risk.  Compare id., 277 F.3d at 601 (considering the gravity of the danger posed by the alleged dangerous condition, and determining that it was not severe), with Inferrera, 575 N.E.2d at 86 (concluding that an unmarked cable between two trees on land known to be used by snowmobilers constituted a grave danger of severe injury or death and overturning a court's grant of summary judgment on a recklessness claim).  See also Sandler v. Com., 644 N.E.2d 641, 644 (Mass. 1995) (concluding that the risk of injury did not meet the standard established for recklessness where the city failed to replace missing drain covers in a bike tunnel).

The court finds instructive two cases applying Massachusetts law with respect to recklessness claims.  In Boyd v. National Railroad Passenger Corporation, 845 N.E.2d 356 (Mass. 2006), the court contemplated a wrongful death suit by the father of a fifteen year old girl who was struck by a commuter train at a railroad crossing.  The court concluded that plaintiff could not recover in negligence, and that there was a triable issue of fact as to whether defendant railroad's conduct constituted reckless disregard for safety for which defendant should be held

22

liable.  See id. at 362-67.  The court emphasized that, in order for a plaintiff to be successful on a

claim of recklessness, "the risk created by a defendant's conduct must be *substantially* greater

than that which would constitute negligence, and the risk must be one involving an easily

perceptible danger of death or grave physical harm."  Id. at 367 (quoting Restatement (Second)

of Torts § 500 & cmt. g) (emphasis in original)).  The court determined that the intersection of

several factors created a triable issue of fact whether the defendants' conduct was reckless:

defendants' alleged violations of two safety statutes; extreme danger posed by public crossings

of railroads; the residential character of the neighborhood around the crossing at issue; and one

defendant's awareness that individuals often went around lowered safety gates to cross the

tracks.  Id.

 In Beausoleil, 138 F. Supp. 2d 189, the court concluded that a jury could properly

conclude that the defendants acted recklessly, because the defendant railroads knew that children

liked to cross the tracks at a certain station, that the signs posted were not deterring children from

doing so, and the engineer of the train knew that passengers were scheduled to be left at the

station shortly before his train was to pass through.  Id. at 205.

 In this case, Defendants parked a train under an electrified catenary wire in a station open

to the public.  This wire was within climbing distance of a passenger area and was left electrified

all night.  Although there was no ladder to reach the top of the train, the climb was done by an

individual who was so drunk that he has no memory of the incident, implying that he was likely

without the poise and balance of a sober individual.  There is no dispute that Defendants knew

that the wire was electrified, and they do not contest that they knew the danger of coming into

contact with an electrified wire.  There is some evidence of notice that an individual could be

injured by climbing from a station platform onto a train and coming into contact with an

electrified wire.[11]  Most importantly, the risk created by the electrified wire is very great and clearly involves the danger of death or grave physical harm.

However, there is no allegation that Defendants violated any safety statutes, and no evidence of prior incidents of individuals injured from climbing on trains and being injured by electrified wires in South Station or even in Massachusetts.[12]  Thus, the court cannot say that the evidence of recklessness is as strong as that contemplated by the Boyd or Beausoleil courts. However, taking the facts in the light most favorable to Plaintiffs, a rational jury could conclude that Defendants were reckless.  See Beausoleil, 138 F. Supp. 2d at 205.  Although Plaintiffs will bear a steep burden to show recklessness, the issue must go to a jury.  See Inferrera, 575 N.E.2d at 85 ("The genuine issue is whether, on the facts that have been recited, a reasonable person . . . would realize that the conduct of the defendants created an easily perceptible danger of death or substantial physical harm.  That issue of fact is for the jury to decide, not for the judge on a

---

[11]      As Defendants point out, there is no evidence that MBTA received notice of the Bengi incident.  Therefore, the evidence of recklessness against MBTA is weaker than the evidence against Amtrak.  Because the court considers only this one incident, however, and the incident occurred in another station in 1992, the court cannot say that this difference in evidence is significant enough to warrant a different outcome of the claims against the defendants.

[12]      The court notes, however, that neither party addressed the issue of whether there were previously reported incidents of individuals climbing atop the trains but not coming into contact with electrified wires.

motion for summary judgment.")  Therefore, Defendants' motion for summary judgment on Hopkins' recklessness claim is denied.[13]

The evidence certainly does not suggest that Defendants had actual intention to cause harm to Hopkins, so the question for trial will be whether Defendants' conduct constituted "an intentional or unreasonable disregard of a risk that presented a high degree of probability that substantial harm would result to another." Beausoleil, 138 F. Supp. 2d at 204.

### 3.  Plaintiffs' Claims for Loss of Consortium

Defendants moved to dismiss Liana and Sean Hopkins' loss of consortium claim solely on the basis that his underlying negligence and recklessness claims fail as a matter of law.  (See Def. Mem. at 14.)  As discussed above, Defendants' motion for summary judgment on Hopkins' recklessness claims is denied.  Therefore, there is an underlying claim upon which the Hopkins' loss of consortium claim can be brought.  See Mass. Gen. Laws ch. 231 § 85X ("The parents of . . . an adult child who is dependent on his parents for support shall have a cause of action for loss of consortium of the child who has been seriously injured against any person who is legally

---

[13]     The court reaches this conclusion without relying on the memorandum of decision in Klein v. National Railroad Passenger Corporation, 04-CV-955 (E.D. Pa.), submitted as Exhibit 22 to Plaintiffs' Opposition to Summary Judgment.  Plaintiffs urge the court to rely on the Klein court's conclusion that Amtrak was not entitled to summary judgment on a plaintiff's recklessness claim arising out of his injuries due to climbing on top of a train and coming into contact with an electrified catenary wire.  (See Pl. Opp'n at 18-19.)  However, the memorandum of decision was later vacated for reasons that remain unclear to the court.  (See Aug. 10, 2009, Order Vacating Various Orders in Klein/Birdewell v. Nat'l R.R. Passenger Corp., 2:04-cv-00955 (LS) (E.D.Pa. Aug. 10, 2009) (Ex. L to Fusaro Supp. Decl. (Dkt. 50-1) ("Vacatur Order")).)  It is unclear to the court what, if any, precedential value the memorandum of decision has after the Vacutur Order, and even if it did have precedential value, the court in Klein applied Pennsylvania law.  Plaintiffs do not cite any authority for the proposition that a vacated memorandum and order still holds precedential value, but merely continue to argue that the facts of the case are similar to the instant case.  Thus, the court does not consider the Klein opinion as part of the basis for its denial of summary judgment to Defendants on Hopkins' recklessness claims.
        Also, the court denies Defendants' motion for summary judgment on this claim without relying on the opinions of Plaintiffs' experts as to what Defendants should have done differently to avoid the potential danger.  The court is not convinced that this evidence is admissible for the purposes Plaintiffs offer it, and not clear that it is relevant to a recklessness claim.  Whether this expert testimony is admissible in further proceedings will likely be the subject of a Daubert motion.  (See Def. Reply at 1 n.2.)

responsible for causing such injury.")  Accordingly, Defendants' motion for summary judgment on this claim is denied.

## IV.    CONCLUSION

Defendants motion for summary judgment is GRANTED as to Hopkins' negligence claims; DENIED as to Hopkins' recklessness claims; and DENIED as to Hopkins' parents' claims for loss of consortium.

SO ORDERED.

|  |  |
|---|---|
|  | _____/s/_____ |
| Dated: Brooklyn, New York | NICHOLAS G. GARAUFIS |
| February 27, 2013 | United States District Judge |