UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BRIAN HOPKINS, LIANA HOPKINS, and
SEAN HOPKINS,

        Plaintiffs,

   -against-

NATIONAL RAILROAD PASSENGER
CORPORATION a/k/a AMTRAK and
MASSACHUSETTS BAY TRANSPORTATION
AUTHORITY,

        Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-2965 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Defendants National Railroad Passenger Corporation ("Amtrak") and Massachusetts Bay Transportation Authority's ("MBTA") motion to bifurcate. (Mot. to Bifurcate (Dkt. 77).) For the reasons stated below, Defendants' motion to bifurcate is GRANTED.

## I. BACKGROUND

The court assumes familiarity with Plaintiffs' factual allegations. (See Feb. 27, 2013, Mem. & Order (Dkt. 57) at 1-6.) Broadly, Plaintiffs allege that Defendants were reckless when they parked a train overnight under a live overhead catenary wire at South Station in Boston. (Id.) Plaintiffs allege that Brian Hopkins ("Hopkins") was gravely injured when he was electrocuted by the wire. (Id.)

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Fed. R. Civ. P. 42(b). "Therefore, bifurcation may be appropriate where, for example,

1

the litigation of the first issue might eliminate the need to litigate the second issue or where one party will be prejudiced by evidence presented against another party." Amato v. City of Saratoga Springs, 170 F.3d 311, 316 (2d Cir. 1999) (internal citations omitted). "Although bifurcation of trials is not unusual and may under appropriate circumstances be the preferred method, bifurcation remains the exception rather than the rule." Dallas v. Goldberg, 143 F. Supp. 2d 312, 315 (S.D.N.Y. 2001). "[W]hether to bifurcate a trial into liability and damages phases is a matter within the sound discretion of the trial court." Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 15 (2d Cir. 1988).

"On a case-by-case basis, courts should examine, among other factors, whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen or eliminate the likelihood of juror confusion." Lewis v. City of New York, 689 F. Supp. 2d 417, 429 (E.D.N.Y. 2010); see also Computer Assocs. Int'l, Inc. v. Simple.com, Inc., 247 F.R.D. 63, 67 (E.D.N.Y. 2007) ("To determine whether bifurcation is warranted, courts generally consider the following three factors: '1) whether significant resources would be saved by bifurcation, 2) whether bifurcation will increase juror comprehension, and 3) whether bifurcation will lead to repeat presentations of the same evidence and witnesses.'" (quoting WeddingChannel.com, Inc. v. The Knot, Inc., No. 03-CV-7369 (RWS), 2004 WL 2984305, at *1 (S.D.N.Y. Dec. 23, 2004)).

## III. DISCUSSION

Defendants argue that "[t]his action is well-suited to bifurcation because the evidence pertaining to Plaintiffs' recklessness claim is entirely distinct from the evidence pertaining to the nature and extent of Hopkins' catastrophic injuries. Accordingly, bifurcation will help prevent the jury from drawing natural, yet impermissible inferences as to liability without prejudicing the

2

presentation of Plaintiffs' case and will promote judicial economy by avoiding lengthy and potentially unnecessary trial proceedings." (Defs.' Mem. in Supp. of Mot. to Bifurcate ("Defs.' Mem.") (Dkt. 79) at 5 (internal citations and quotation marks omitted).)

Plaintiffs oppose bifurcation for three reasons. First, they contend that there is minimal risk that Defendants will be prejudiced, because "[i]n order for the jury to decide if Amtrak and/or the MBTA were reckless in causing this accident, they must be informed of the nature and extent of Brian Hopkins' injuries." (Pls.' Mem. in Opp'n to Defs.' Mot. to Bifurcate ("Pls.' Mem.") (Dkt. 80) at 4.) Second, Plaintiffs argue that "since the parties have greatly paired down the witnesses, bifurcation will have a more minimal effect on judicial economy." (Id. at 5.) Finally, Plaintiffs maintain that bifurcation risks prejudice to them, because it "provides an incentive for some juries to find against plaintiffs, not on the evidence, but on their desire be done with their service." (Id. at 6.)

### A. Risk of Prejudice to Defendants and Juror Confusion over Liability

Defendants' prejudice argument has two critical premises: first, that there is minimal overlap, in either theory or proof, between Plaintiffs' liability and damages case; and second, that exposing the jury to the damages case likely would prejudice Defendants' liability defense. The court finds both premises to be compelling; absent bifurcation, Defendants would likely be prejudiced and the jury may be confused.

#### 1. Overlap between Liability and Damages

Plaintiffs argue that there is significant overlap between the liability and damages phases of their case because, under Massachusetts law, a finding of recklessness requires an assessment of the risk of harm, including "the extent of the harm inherent in the hazard creating the risk."

3

(Pls.' Mem. at 4.) Plaintiffs reason that the jury must learn about Hopkins's injuries in order to assess the dangerousness of overhead catenary wires. (Id. at 5.) The court disagrees.

A showing of recklessness under Massachusetts law does not require actual substantial harm (which would require testimony concerning Plaintiff's actual injuries); instead, it requires only that the <u>risk</u> of harm be substantial. <u>See, e.g.</u>, <u>Manning v. Nobile</u>, 582 N.E.2d 942, 946 (1991) (holding that recklessness requires that "the risk, viewed prospectively, must entail a high degree of probability that substantial harm would result to the plaintiff." (internal quotation marks and citation omitted)); <u>see also</u> Restatement (Second) of Torts § 500 cmt. g (1965) ("[T]he actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent."). Thus, under Massachusetts law, the relevant question is whether live overhead catenary wires posed an <u>ex ante</u> substantial risk to individuals at South Station.

Plaintiffs intend to call numerous witnesses who will testify regarding the risk of harm posed by live overhead catenary wires. For example, Richard Gill, Plaintiffs' human factors expert, has stated that the overhead catenary wire was a "life threatening hazard." (JPTO at 14.) Likewise, Michael Morse, Plaintiffs' electrical expert, is expected to testify regarding the risks associated with "arcing" from live catenary wires. (Id. at 15.) Indeed, Defendants "do not intend to dispute[] that the risk created by the electrified wire is very great and clearly involves the danger of death or grave physical harm." (Defs.' Mem. at 6 (internal quotation marks and citation omitted).) True, testimony concerning Hopkins's actual injuries may offer some circumstantial evidence of the <u>ex ante</u> risk posed by live wires. However, to the extent Hopkins's testimony is needed at all to show the <u>ex ante</u> risk of a live wire, such liability

4

testimony would be significantly more limited than a thorough examination of the actual damages Hopkins suffered.

In circumstances similar to this case, courts have found that the liability and damages facts did not overlap. For example, in Guidi v. Inter-Cont'l Hotels Corp., the court found that bifurcation was justified where:

> The evidence to be presented on the issue of liability focuse[d] on whether the security at the Semiramis Hotel, where the tragic events of October 26, 1993 occurred, was appropriate. . . . In contrast, the damages issue will revolve around the injuries sustained by and the pain and suffering of the victims and other damages suffered by their families.

No. 95-CV-9006 (LAP), 2003 WL 1846864, at *1 (S.D.N.Y. Apr. 8, 2003). Indeed, the Guidi court found that there was not sufficient overlap between liability and damages despite recognizing that the plaintiff likely would need to testify as to both. Id. at *2.

Here too, the issues to be addressed at the liability phase mainly concern the security and safety precautions taken at South Station, whereas the damages phase concerns the injuries sustained by Hopkins. Thus, the court concludes that liability and damages are not so intertwined that bifurcation would be impractical.

2. Prejudice

In addition, the court finds that Defendants likely would be prejudiced if the liability and damages phases were not bifurcated. At the damages phase, Hopkins will recount his extensive injuries, which include severe burns, multiple amputations, and alleged sexual dysfunction, and other witnesses will offer testimony concerning Hopkins's extensive pain and suffering. (See, e.g., JPTO 6, 9, 11-12.) "The emotional and heart-rending testimony of the plaintiffs as to the pain and suffering they and their loved ones experienced as a result of the tragic events [here at issue] will unquestionably cloud a jury's ability to render an objective verdict on the issue of

5

liability." Guidi, 2003 WL 1846864, at *2. Indeed, courts in this circuit regularly find that "[e]vidence of harm to a plaintiff, regardless of the cause, may result in sympathetic jurors more concerned with compensating plaintiff for his injury than whether or not defendant is at fault." Lagudi v. Long Island R. Co., 775 F. Supp. 73, 74-75 (E.D.N.Y. 1991) (quoting Buscemi v. Pepsico, Inc., 736 F. Supp. 1267, 1272 (S.D.N.Y. 1990)); see also Mineo v. City of New York, No. 09-CV-2261 (RRM) (MDG), 2013 WL 1334322, at *2 (E.D.N.Y. Mar. 29, 2013); Zofcin v. Dean, 144 F.R.D. 203, 205 (S.D.N.Y. 1992). Thus, the court concludes that without bifurcation, Defendants' liability case likely would be prejudiced.

### B. Judicial Economy

Bifurcation here also serves the interests of judicial economy. If, following the liability phase, the jury finds that Defendants are not liable, the court and the parties will be spared the cost and time of holding a trial on the damages phase. See, e.g., Crown Cork & Seal Co. Master Ret. Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 335, 338 (S.D.N.Y. 2013); Paulay v. John T. Mather Mem'l Hosp., No. 14-CV-5613 (SJF) (AYS), 2016 WL 829992, at *2 (E.D.N.Y. Mar. 3, 2016) ("[E]vidence of the nature and extent of plaintiff's physical pain and emotional distress will be unnecessary if the jury finds no liability against defendant, bifurcation will further the goal of efficiency."). These judicial economy concerns are particularly acute in this case where much of the liability phase has been narrowed in pre-trial motion practice. (See Feb. 27, 2013, Mem. & Order (granting in part Defendants' motion for summary judgment).) Indeed, liability now largely revolves around the single issue of whether Defendants' conduct was reckless. (Id.) By contrast, the damages phase is likely to be lengthy. (See JPTO at 11-12 (describing numerous damages witnesses).) Accordingly, the court finds that bifurcation benefits judicial economy.

### C.  Risk of Prejudice to Plaintiffs

Finally, Plaintiffs oppose bifurcation because "bifurcation provides an incentive for some juries to find against plaintiffs, not on the evidence, but on their desire be done with their service and return to their normal routines as soon as possible." (Pls.' Mem. at 6.) The court finds this concern significantly overstated. First, Plaintiffs admit that "jurors often take their responsibility seriously." (Id.) This aligns with the court's experience with jurors. In the vast majority of cases, jurors are engaged and take their role seriously. Second, and more important, the type of juror who would be so swayed by avoiding service during the damages phase of the trial, is likely the type of juror who will seek to avoid service all together. Such a juror's desire to avoid service will most likely be revealed in voir dire. At that time, Plaintiffs can either strike the juror or move to have the juror struck for cause. Thus, the court concludes that bifurcation presents little risk of prejudice to Plaintiffs.

For the above reasons, the court finds that bifurcation is proper.

## IV.  SEPARATE JURIES AND TIME BETWEEN PHASES

Plaintiffs argue that "if the court orders bifurcation, the damages portion of the case should be heard by a different jury some time after liability is decided." (Pl.'s Mem. at 6.) Defendants disagree. (See Defs.' Reply (Dkt. 91).) The court finds that separate juries are unnecessary.

"[I]t seems to be accepted that the better and preferred practice is to use the same jury for all of the issues in an action, even though it may hear those issues at different times. This certainly is the safer course for the court to follow." 9A Charles Alan Wright, Arthur Miller & Edward H. Cooper, Federal Practice and Procedure § 2391 (3d ed. 1988). Plaintiffs argue that the court should depart from this preferred practice for two reasons. First, Plaintiffs argue that

separate juries will eliminate the potential of jurors deciding the case against Plaintiffs to shorten their jury service. (Pls.' Mem. at 7.) As discussed above, the court does not believe that there is much risk that a jury would find against Plaintiffs on liability in order to shorten their service. (See suprs Part III.C.) Second, Plaintiffs argue that separate juries would prevent jurors' notions concerning liability from effecting their damages decision. (Pls.' Mem. at 7.) Again, the court thinks this risk is unlikely. The jury will be told at the outset that liability and damages are distinct. Indeed, in the event that the jury hears damages evidence at all, they already will have found in favor of Plaintiffs on liability, so any risk of prejudice to Plaintiffs is minimal. Accordingly, the court will not utilize separate juries.

Plaintiffs also argue that there should be a short time period between the liability and damages phase. (Pls.' Mem. at 6.) Defendants do not appear to object. Plaintiffs offer three reasons in support of having a short break between the damages and liability phase. First, they argue that a short break will eliminate the need for Plaintiffs to prepare witnesses who may not be called. (Id. at 6-7.) Second, Plaintiffs claim that a short break will eliminate the need to prepare evidence that may never be used. (Id. at 7.) Finally, Plaintiffs maintain that a short break will give the parties time to resolve the case. (Id. at 8.) Accordingly, Plaintiffs propose a break of 30-60 days between the liability and damages phase.

The court believes that 30 days is too long of a time for the jury to wait for the parties to prepare their damages witnesses and evidence. Indeed, Plaintiffs implicitly represented that they would have been prepared immediately to begin the damages phase had bifurcation not been ordered when they opposed bifurcation. Nonetheless, the court sees some benefit to giving the parties a chance to resolve damages issues in the event that the jury rules for Plaintiffs on

liability. Moreover, the court notes that witnesses benefit from having firm date on which to testify.

Accordingly, the court will inform the jury that the trial will last approximately three weeks. Therefore, the court plans to begin the damages phase on the third Monday of trial. Assuming the parties' projections of the length of the liability phase are accurate, this will allow for up to a week between the damages and liability phases, which the court believes is more than enough time.

## V. CONCLUSION

For the reasons stated above, the court holds:

- The liability and damages phases of trial will be bifurcated.
- The trial will occur before a single jury.
- The damages portion of trial will begin on the third Monday of trial.

SO ORDERED.

Dated: Brooklyn, New York
April 18, 2016

s/Nicholas Garaufis
NICHOLAS G. GARAUFIS
United States District Judge